## JOHN T. BELL ET AL. V. GEORGE P. PAUL.

[FILED SEPTEMBER 21, 1892.]

1. **Principal and Surety**: BUILDER'S BOND: LIABILITY OF SURETY. A contractor entered into a written agreement with the owner to furnish all materials and erect for him a building in accordance with certain plans and specifications, and deliver the same free from all liens for labor or materials; and the contract further provided that the contractor was to receive therefor a stipulated sum, payable as the work progressed, on the estimates of the architect, less fifteen per cent, which was to be retained by the owner until the expiration of ninety days from the completion of the work, and then was payable only in the event that there were no liens upon the property for labor or materials supplied through the contractor. A bond was given by the contractor, with sureties, to complete the building according to the contract, and turn the same over to the owner discharged of all liens. Payments were made to the contractor without the consent of the sureties, during the progress of the work, without estimates of the architect, and in excess of eighty-five per cent of the contract price. In an action on the bond it was *held*, that the sureties were discharged from liability.

2. **Damages.** *Held*, That the tenth instruction to the jury did not correctly state the rule of damages in an action upon the bond.

ERROR to the district court for Douglas county. Tried below before DOANE, J.

*Kennedy & Learned*, for plaintiffs in error:

Surety may stand on terms of his contract, and if material variation be made therein, without his consent, he will be discharged. (*Brennan v. Clark*, 29 Neb., 385; *Simonson v. Thori*, 31 Minn., 861; *Miller v. Stewart*, 9 Wheat. [U. S.], 703; *Judah v. Zimmerman*, 22 Ind., 392; *Dorsey v. McGee*, 30 Neb. 657.) The *per centum* fund to be retained under a building contract is to indemnify defendant in error against loss in case of failure of builder to complete contract, as well as a protection to sureties on

builder's bond; and defendant in error's failure to retain the fund released the sureties on the builder's bond. (*St. Mary's College v. Meagher*, 11 S. W. Rep. Ky., 608; *Calvert v. London Dock Co.*, 2 Keen [Eng.], 639; *Bragg v. Shain*, 49 Cal., 131; *Ryan v. Trustees*, 14 Ill., 20; *Dullaghan v. Fitch*, 42 Wis., 682.)

*Mahoney, Minahan & Smyth*, contra, cited: *Starr v. Blanter*, 76 Ia., 356; *Ryan v. Morton*, 65 Tex., 258; *Pascault v. Cochran*, 34 Fed. Rep., 358; *Casey v. Gunn*, 29 Mo. App., 14; *Haine v. Dambach*, 4 Pa. County Ct. Rep., 633; *Hagood v. Blythe*, 37 Fed. Rep., 249; *Board Sch. Drs. v. Judice*, 2 So. Rep. [La.], 792.

NORVAL, J.

This is an action by George P. Paul against Norling & Reynolds, as principals, and John T. Bell and Ed. L. Howe, as sureties, on a certain building contract bond. The trial resulted in a verdict in favor of the plaintiff below in the sum of $1,418.86. A motion for a new trial having been filed by the defendants the plaintiff filed a *remittitur* for $122.36, whereupon the court overruled the motion for a new trial, and rendered judgment in plaintiff's favor for the sum assessed by the jury, less the amount of said *remittitur*. The sureties bring the cause into this court for review by petition in error.

A brief statement of the facts will assist in a proper understanding of the questions presented. On the 30th day of April, 1887, Norling & Reynolds, contractors and builders, entered into a written contract with George P. Paul, by which they agreed to furnish all materials and perform all the labor necessary to build, finish, and complete in good, first-class and workmanlike manner, for said Paul, in the city of Omaha, to his complete satisfaction, a frame dwelling, plumbing and heating excepted. The material was to be furnished and the labor performed under

19

the supervision and direction of George L. Fisher, architect, and in accordance with the plans and specifications prepared by him. The contractors were to receive the sum of $3,465, which was payable as the work progressed, on the estimates of the architect, which were to be based on the value of the work performed and material furnished, and the amount of each estimate was to be paid, less fifteen per cent, which was to be retained until the expiration of ninety days from the completion of the work and its acceptance by the architect and owner, and it was then to be payable only in the event that there were no liens upon the property for labor or materials supplied through the contractors. It was also stipulated in the contract that should Norling & Reynolds, at any time during the progress of the work, refuse or neglect to supply sufficient materials or workmen, or cause any unreasonable suspension or neglect of the work, or fail or refuse to comply with any of their agreements in said contract contained, then said Paul was to have the right and power to enter upon and take possession of said premises, and provide materials and workmen sufficient to finish the work, after giving forty-eight hours' notice in writing. The expense of said notice and the costs of finishing the work were to be deducted from the contract price. It was further provided that the contractors should give a bond in the sum of $1,200 for the faithful performance of the contract, and to complete the work at time specified, and turn over the building free from all incumbrances or liens for labor or material.

On the 3d day of May, 1887, the bond in suit was executed, which contained the following condition: "Now if said Norling & Reynolds furnish all material and perform all labor in connection with said building as per said plans and specifications and contract, and turn over said building free from liens for labor or materials furnished through said Norling & Reynolds, then these presents to be void, otherwise to be of full force and effect."

Work was commenced under the contract in the month of May, and on the 3d day of September, 1887, the contractors, after having partially completed the building, either abandoned the contract or were excluded from the completion of the same by the owner, whereupon said Paul finished the job, paying for materials and labor used in completing the building the sum of $421.43. It also appears that the owner paid the contractors during the progress of the work, prior to the alleged abandonment, $2,422.50, and after which he paid about $2,500 without estimates, on orders of the contractors given to the mechanics who had worked under Norling & Reynolds, and to the persons who had furnished them materials for the erection of the building. The cost of the structure exceeded the contract price in nearly the sum of $1,900.

It is insisted that the contractors were prevented from completing the building by the owner taking possession thereof and excluding them therefrom; therefore the sureties were discharged from all liability on the bond. The question was fairly submitted to the jury, whether Norling & Reynolds voluntarily abandoned the work and refused to proceed with the same, or whether they were prevented from so doing without their consent, by Mr. Paul assuming the control of the building and the completion of the same, and they found that the contractors voluntarily abandoned the work. We think the testimony justified the finding. The reason they did not finish the job was because the architect declined to give an estimate on September 3, 1887. The fact that one was refused furnished no valid excuse to the contractors to abandon the contract and refuse to complete the building, even had they been entitled to an estimate. Until one was furnished the owner was not obliged to pay; that is clear; nor was his failing so to do any justification for their abandonment of the job.

Counsel urge that the sureties are not liable because payments were made the contractors in violation of the terms

of the contract.   It is uncontradicted that the sum of $300 was paid Norling & Reynolds on May 21, 1887, without an estimate of the architect; the first estimate of the architect was not furnished until seven days later.   The defendant in error contends, and such, we think, is the proper inference to be drawn from the evidence, that this sum was advanced to or loaned the contractors with the understanding that the same should be refunded when the first estimate was made; that on May 28 the architect gave an estimate certifying that the contractors were entitled to a payment of $600, less fifteen per cent.   The $300 previously advanced was then deducted therefrom, and there was paid Norling & Reynolds, under the estimate, $210, and no more.   We do not yield assent to the proposition that the advancement of the $300, under the circumstances, released the sureties.   It was not in fact, nor in law, a payment upon the contract, but a mere loan of that amount of money, until an estimate was obtained, which did not in any manner violate the contract or discharge the sureties.   But payments were made contrary to the provisions of the contract.   It is conceded by both parties that but six estimates were given by the architect, which amounted in the aggregate to $2,850, less the fifteen per cent reserved by the contract, or $2,422.50 net.   The last estimate bears date August 13, 1887.   The proof shows that on September 3, Norling & Reynolds applied to the architect for a further estimate, which was refused, and no other estimate was ever given; yet, notwithstanding this, the defendant in error subsequently disregarded the terms of the contract by accepting and paying orders drawn on him by the contractors in favor of different parties, for materials furnished and labor performed in the erection of the building, amounting to several hundred dollars, without the consent of the sureties, so that the entire contract price, and more, was paid to the contractors, counting the amounts paid on their orders without estimates.   By the contract fifteen per cent was to

be retained by Mr. Paul and was not to be paid over by him until after the building was completed, and was then payable only in the event that there were no liens filed for labor performed or materials furnished.   The provision of the contract relating to the retention of the fifteen per cent was intended as a protection of both Mr. Paul and the sureties upon the bond.   It constituted a fund in the hands of Mr. Paul, with which to pay off and discharge any liens that might be filed against the building, and the sureties had a right to insist that the fund thus created should be retained, and that payments should be made according to the contract.   The failure of the defendant in error to retain the fifteen per cent released the sureties. (*Bragg v. Shain*, 49 Cal., 131; *St. Mary's College v. Meagher*, 11 S. W. Rep. [Ky.], 609.)

It is insisted that the stipulation of the contract relating to payments on estimates has reference only to payments made to the contractors.   Granted; but how does that affect the defendant in error?   Numerous payments were made without estimates, on orders given by the contractors on Mr. Paul.   The payment of these orders by the drawee was, in effect, a payment to the contractors.   Nor is it material that the orders were given and paid after it is claimed the work was abandoned by Norling & Reynolds; that they had violated the contract did not justify the other party to disregard the provisions written therein on his part to be performed.   A party who seeks to enforce a contract must not, himself, have been guilty of a breach thereof.

Objections are made to several paragraphs of the charge of the court, but one of which we will notice, and that relates to the tenth instruction, which reads as follows:

" If, under the testimony adduced upon the trial and the instructions above given you, you shall find for the plaintiff, you will assess as his damages such amount as the testimony shows he was obliged to and did expend in the

payment and discharge of obligations which had been in-
curred by the contractors for work performed and materials
furnished for the erection of the building and which were
actually applied to that purpose, and for which the persons
performing the work or furnishing the materials would be
entitled to a lien upon the building for such amounts, and
which had not been paid by the contractors. But in no
event can you return a greater amount in your verdict than
the penalty of the bond, to-wit, $1,200, with interest on
such amount at the rate of seven per cent per annum from
the commencement of this action."

This instruction is clearly erroneous, in that it fails to
state the true rule of damages. By it the jury were told
to allow the plaintiff the amounts paid in liquidation of
claims for labor performed and materials furnished under
the contract for the construction of the building, instead of
limiting the recovery to the amount paid in settlement of
liens against the property. The extent of ,the obligation
of the sureties was that the contractors should complete the
building and turn over the same to the owners "free from
liens for labor or materials furnished through Norling &
Reynolds." Further than this, they did not undertake or
promise.

It is admitted that only one lien was filed against the
building, which was on a claim for $358.80, for brick
furnished by one Thomas Murry, yet the judgment was for
$1,296.50, the full penalty of the bond, with interest. It
is quite immaterial that the amount paid by Mr. Paul was
justly due for labor performed and materials supplied in
the construction of the building. As liens therefor had
not been filed, the payment was entirely voluntary. Plaint-
iffs in error did not obligate themselves that the contractors
should pay for all labor and materials, only that the build-
ing should be delivered to the owner free from all liens.
Sureties are not bound beyond the terms of their engage-
ments.

For the reasons stated, the judgment is reversed and the cause remanded for further proceedings.

REVERSED AND REMANDED.

THE other judges concur.