WEEKS v. WILMINGTON AND WELDON RAILROAD COMPANY.

(Filed September 30, 1902.)

1. NEGLIGENCE—*Railroads—Trestle.*

   A person who goes upon a railroad trestle is guilty of negligence.

2. NEGLIGENCE—*Railroads—Trestle.*

   Where a person goes upon a railroad trestle, and seeing an approaching train, jumps and is injured, and the train stops before reaching the trestle, the railroad is not guilty of negligence.

ACTION by Mamie Weeks against the Wilmington and Weldon Railroad Company, heard by Judge *Francis D. Winston* and a jury, at April Term, 1902, of the Superior Court of JONES County. From a judgment for the plaintiff, the defendant appealed.

*Simmons & Ward,* and *P. M. Pearsall,* for the plaintiff.
*Junius Davis,* for the defendant.

COOK, J. On October 3, 1899, plaintiff and two other ladies, Misses Simmons and Emmett, were out walking, and as they passed by defendant's depot, heard the agent say that the mail train, due from the north, was expected in seventeen minutes. They then walked along the railroad track towards the Trent River, some four hundred feet distant, which is spanned by a railroad bridge. Before reaching the river, the track is upon an embankment about twelve feet high, then follows a trestle 120 feet to the river, and 12 or 14 feet above the ground, then the bridge 117 feet across, and then the trestle on the north side, 31 feet long. The bridge and trestle are not provided with any conveniences as a passway for people, nor is there any place of safety provided for people to protect themselves from a passing train. When they came to the trestle, they did not intend to go across, for, testifies the plaintiff, "we knew we could not get across before the train came," but continued their walk upon the trestle (120 feet, nearly half way across), until they reached the bridge just over the water, when one of them suggested, "Suppose the train would come, what should we do?" Just then they looked back and saw a train coming (this was a log train coming up from Maysville to Pollocksville to take siding and let the passenger train pass), and turned back, meeting it, which was then a "little way from the depot." Miss Emmett ran and got off the trestle and ran down the embank-

ment some 25 or 50 yards ahead of the engine, and the other two might have done likewise; but Miss Simmons would not run and leave Miss Weeks, the plaintiff, who was weak and feeble, caused by an accident which had happened to her two months previous, rendering her unable to run fast. But such weakness and feebleness were not known to defendant's employees on the train. The train was not going to cross the bridge, but this was not known to plaintiff and her companions. Miss Simmons had plaintiff by the hand, and they were trying to get off; but plaintiff being weak, and thinking that she could not get off, pushed Miss Simmons aside; and seeing the engine coming near the trestle, Miss Simmons swung down by the cap-sill her length and jumped, landing upon the ground unhurt; and plaintiff jumped from the top of the trestle to the ground, fourteen feet beneath, and was injured in the ankle and back. Plaintiff and Miss Emmett, and one of defendant's witnesses, testified that when she jumped the engine was close upon and moving towards her, and did not stop until it had passed beyond the place from which she jumped; and while upon the ground, plaintiff and Miss Simmons looked up and saw log-cars above them, and the cinders from the engine fell down upon them. Eight witnesses (three of whom were employees upon the train, and five not connected with defendant), testified on behalf of defendant that the train stopped at the clear-post, 12 or 16 feet from the trestle, and did not go upon the trestle until after the ladies had jumped off. There was also evidence that one of the employees of defendant company (Brandt) hallooed to the ladies not to jump, and that it was heard by the witness Lee 125 yards away. Witness Harriott testified that plaintiff was about two *bents* (about 24 feet) from the south end of the trestle when she jumped.

Of the eight assignments of error, we deem it necessary to consider only the third. Defendant requested the Court to charge the jury that "If the jury shall believe from the evi-

dence that the engine of the defendant stopped upon the embankment on the south end of the trestle, and did not go upon the trestle until after the plaintiff had jumped from the trestle, then the jury should answer the first issue 'No.' " The first issue was, "Was plaintiff injured by the negligence of the defendant ?" His Honor refused to give this instruction, and in this there is error.

This railroad bridge and trestle were constructed solely for the use of the defendant company, and no invitation was extended to the public to go upon them; so, no place of safety was provided against the passing of trains. Plaintiff knew of its danger, for that was apparent; she also knew that a train was expected to cross it within 17 minutes after she left the depot, 400 feet away, and knew that she could not get *across* before the train came, and in the face of such knowledge went nearly half way (120 feet) across it without stopping to consider the danger. Being uninvited, and without even showing a license to enter upon it, she voluntarily put herself in a dangerous and perilous condition and became a trespasser. There is no conflict in the evidence concerning the trestle and the bridge, and of the plaintiff's being on it, and of her conduct while there, and that the trestle was from 12 to 14 feet high, and a place of danger; so, negligence becomes a question of law, and this Court has decided that such entry upon a trestle under similar circumstances is contributory negligence. Therefore, upon the uncontradicted evidence of plaintiff and defendant, plaintiff was guilty of negligence in going upon the trestle.

In *Little v. Railroad,* 119 N. C., on page 776, the Court says: "It was decided in *Clark v. Railroad,* 109 N. C., 430, 14 L. R. A., 749, that a person who places himself on a railroad trestle so high as to make it perilous for him to jump to the ground, is negligent, and that he is guilty of contributory negligence if he is injured by a passing train."

In this case plaintiff was not injured by a passing train, but was injured by her own act, which is alleged and insisted upon as having been forced upon her by the negligence of defendant in not stopping its train, and by failing to do so, forced her as a dernier resort to accept the lesser of two apparent dangers. If the train was stopped at or near the clearpost, as testified to by defendant's witnesses, then defendant discharged its duty and would not be liable; but if it was not stopped, but continued its course, as testified to by plaintiff and her witnesses, it would be. When did it become the duty of defendant to stop the train? When the engineer first saw the ladies on the trestle? Certainly not, for he saw one run forward to get off 25 or 50 yards ahead of the engine. The other two remained upon the trestle, and were in no danger of the engine if it was stopped at the clear-post, as testified to by the employees on the train. They had the same opportunity, and apparently a like physical power, to come forward and get off that Miss Emmett had, had they so desired. Why they remained was not known to the engineer. He did not know of the feeble condition of plaintiff, but had a right to presume that she was able to take care of herself, and that she and her companion would do so. If, being conscious of her feeble condition, she became frightened, and in her excitement imprudently and unnecessarily jumped over and was injured, that was her misfortune and not defendant's fault. She was not placed, or induced to go, upon the trestle by any negligence of defendant company, but, being there, she could have remained or gone in the direction of the bridge with perfect safety, if unable to head off the train, as Miss Emmett did. Therefore, if she adopted a perilous mode in endeavoring to escape an apprehended danger under excitement, defendant would not be responsible for the result. Beach on Contributory Negligence (3d Ed.), Sec. 40; *Jones v. Boyce,* 1 Starkie, 493. Had plaintiff gone upon the trestle through the negligence of defendant, and acted negligently

or wildly under the excitement in adopting a means of escape and been injured, then it would not be considered negligence or contributory negligence, although there may have been at her command a safer and more certain means of escape, "for the reason that persons in great peril are not required to exercise all that presence of mind and carefulness which are justly required of a careful and prudent man under ordinary circumstances." Beach, *supra.* But "no such allowance is made in favor of one whose own fault has brought him into the peril which disturbs his judgment." 1 Shearman and Red. on Neg., Sec. 89. So, plaintiff having voluntarily gone upon this dangerous place, which is deemed negligence by our Court (*Little v. Railroad, supra*), she would be required to guarantee her own judgment when confronted with peril and the emergency arose.

But plaintiff alleges, and so testifies (together with two other witnesses), that the train did not stop, and had she remained on the trestle she would have been killed; wherefore, she acted prudently, and escaped with an injured ankle and back rather than losing her life. Whether this was so or not was most material to the issue. If it be true, as she testifies, then defendant company, having had the last *clear chance,* and having failed to exercise it, would be guilty of negligence, and plaintiff would be entitled to recover notwithstanding her negligence. But if it be not true, and be as testified to by eight witnesses on behalf of defendant, and the engine was stopped some 35 or 40 feet from her, then she was not in peril from the approaching train, and no allowance would be made by the unwise, negligent and imprudent method of escape adopted by her under excitement and apprehension, and defendant company would not be guilty of negligence, and his Honor should have instructed the jury as prayed for in the third prayer.

New Trial.

DOUGLAS, J., concurs only in result.