## TURLEY v. FEEBECK *et al.*

No. 2618.    Opinion Filed June 3, 1913.

(132 Pac. 889.)

1. **APPEAL AND ERROR—Review—Findings of Fact—Sufficiency of Evidence.** Where there is no evidence reasonably tending to support the findings of the trial court upon any issue of fact, such finding cannot be permitted to stand on appeal.

2. **SAME—Change of Theory.** Where a party tries his case in the trial court upon one theory, he cannot in this court change front and try to prevail upon theories of fact and of law applicable thereto not presented to the trial court.

(Syllabus by the Court.)

*Error from District Court, Creek County;*
*W. L. Barnum, Judge.*

Action by John T. Turley against Maggie E. Feebeck and Hickman P. Ritchie. Judgment for defendants, and plaintiff brings *error. Reversed and remanded, with directions.

*Hughes & Miller,* for plaintiff in error.
*Frank L. Mars,* for defendants in error.

HAYES, C. J. This action was originally brought by John T. Turley, plaintiff in error, against Maggie E. Feebeck and Hickman P. Ritchie, defendants in error, wherein he sought to have declared a resulting trust in his favor in and to lots 13 and 14 in block 9 in Woodlawn addition to the city of Sapulpa. He alleges in his amended petition that on the 6th day of December, 1904, he purchased from the Sapulpa Townsite Company said lots, and paid as a consideration therefor the sum of $200. He alleges that at that time he was a resident of the state of Kentucky; and that on or about said date, he forwarded to the defendant Maggie E. Feebeck a United States postal money order for the sum of $200 with which to obtain for him a conveyance of said property; that said defendant Maggie E. Feebeck disregarded her instructions, and obtained a conveyance of the property from the Sapulpa Townsite Company by warranty deed to Mary E. Turley, who was then the wife of plaintiff, and was the sister of the defendant Maggie E. Feebeck; that such deed was procured to be made, to his wife without his knowledge or consent. He further alleges that thereafter Mary E. Turley, his wife, departed this life intestate, and without issue, and left as her sole surviving heirs the plaintiff and the defendant Hickman P. Ritchie, deceased's father, who is also father of defendant Maggie E. Feebeck, by reason of which facts he alleges—and it is admitted—that defendant Hickman P. Ritchie and plaintiff inherited from the deceased wife each an undivided half interest in the property she owned in this state. He alleges that thereafter defendant Maggie E. Feebeck, with full notice and knowledge of all the facts, and of plaintiff's claim and title to said lots, procured from her father, the

defendant Hickman P. Ritchie, a deed of conveyance, without consideration, by which he purported to convey to her an undivided half interest in said lots. He thereupon prays that he have judgment, declaring that defendant Maggie E. Feebeck holds the title to an undivided half of said lots in trust for him, and requiring her to convey same to him. Defendants, by their answer, admit all the allegations of plaintiff's petition, except that they deny that the lots were purchased by plaintiff, and that he furnished the sum of $200 to pay the consideration therefor, and they deny that Maggie E. Feebeck had knowledge prior to the time she received the deed conveying an undivided half interest to her, that plaintiff was the owner of the equitable title to such undivided half interest in the lots, and she further alleges that Mary E. Turley was in fact the purchaser of said lots, and that defendant Maggie E. Feebeck was instructed by said Mary E. Turley to represent her in the buying of said lots, and that she, Mary E. Turley, had the means and money to pay the consideration therefor. The cause was tried to the court without the intervention of a jury. The court made certain special findings of fact, and also a general finding in favor of defendants. The special findings embrace only such facts as were admitted by the pleadings; but by the general finding the issue made by the pleadings as to whether plaintiff purchased said lots and furnished the purchase price, and whether defendant Maggie E. Feebeck had notice of his title before she procured the deed for the property, was found against plaintiff.

On this appeal plaintiff complains that this finding of the court is not supported by the evidence, and is against the evidence. The record in our opinion sustains this contention. Plaintiff testified that he now resides and did at the time of the purchase of the lots in the state of Kentucky.

Relative to the transaction, his testimony is as follows:

"Q. State whether or not she resided there on March, 1904? A. Yes, sir. Q. State whether or not you recall the circumstances of the purchase by you of two lots near or

in Sapulpa, Okla.? A. Yes; I think it was in December, 1904. Q. Through whom was the purchase made? A. Mrs. Feebeck. Q. I will describe lots No. 13 and No. 14 in block No. 9 in Woodlawn addition to the city of Sapulpa, Creek county, state of Oklahoma, were they the lots? A. Yes, sir. Q. What was paid for these lots? A. $200. Q. Who paid for these lots? A. I furnished the money. Q. How was it paid? A. Paid through Mr. Burris, postmaster at headquarters. Q. What medium was used? A. Money order. Q. How did you pay Mr. Burris for that money order? A. I gave my check for it. Q. Was Mrs. Feebeck in here at that time, or was the money sent to her? A. The money was sent to her. Q. By money order? A. Yes, sir. Q. Do you recall whether or not you delivered the check to Mr. Burris as postmaster and sent the money order to Mrs. Feebeck, or whether or not you gave the check, payable to Mr. Burris, to your wife to take to the postmaster, and secure the money order and mail it to Mrs. Feebeck? A. I gave Mr. Burris the check myself. Q. State how that money order was made out? A. To Maggie Feebeck. Q. Did you direct Maggie Feebeck how to have the deed made to those lots? A. No, sir; I did not; I just supposed it was going to be made to me, though. Q. When did you first learn that the deed was made to your wife? A. Never until the deed came back here, and that was some time after the purchase was made. Q. Was that before your wife died? A. Yes, sir. Q. Did you have any talk with your wife about the deed? A. Nothing particular; just thought that maybe the deed ought to have been made to me; am not sure of that. Q. Did you ever have any understanding with her or with Maggie Feebeck that the deed was to be made to your wife? A. No, sir. Q. In negotiating the purchase of these lots, who did Maggie Feebeck write to, you or your wife? A. My wife was out there at the time the lots were laid off, and when she came back home she was telling me of the new town-site that was being laid out there, and that she had picked out two lots, and that she wanted me to buy them. It run along for a while, and I finally told her I would send the money and buy the lots, but when the money got there the two lots were sold; I told her then to write Mrs. Feebeck that the money was there, and not to send it back, but to

pick out two other good lots and buy them. It was a month or two after that before I got the deed."

That he purchased the money order, as testified to by him, plaintiff is corroborated by two other witnesses. There is an entire absence of any evidence in the record to contradict the foregoing testimony. There is evidence that after the death of his wife plaintiff attempted to procure from defendant Hickman P. Ritchie a deed conveying to plaintiff the legal title. There was also some evidence to the effect that at the time plaintiff married Mary Turley she possessed some personal property. There is also evidence that after the controversy over the lots arose plaintiff offered to one·of the defendants to accept the amount of money that had been paid out for the lots and legal interest thereon, and to execute deed for same; but this evidence does not disprove that plaintiff purchased the lots and furnished the consideration as testified to by him, and there is absence of any evidence that Mary E. Turley furnished the money with which to purchase these lots or that it could have come from any other source than as testified to by plaintiff.

Where there is lacking any evidence reasonably tending to support the findings of the trial court upon any issue of fact, such finding cannot be permitted to stand on appeal. *United States Fidelity & Guaranty Co. v. Alexander et al.,* 30 Okla. 224, 120 Pac. 632; *Howard v. Farrar,* 28 Okla. 490, 114 Pac. 695. As to the consideration paid by Maggie E. Feebeck for the lots, she testified as follows:

"I never did give my father any money; but I did give him a pair of rubber shoes; and that is all I paid him. He said when I went home to see what the law was out here on these lots; to have a lawyer look them up, if he had any interest in the lots, he would give them to me."

And her father testified that she gave him nothing whatever for them. Plaintiff testifies that, before Maggie E. Feebeck obtained the deed from her father, he told her of plaintiff's claim to the lots; and this testimony is not con-

tradicted. From other evidence in the record it is clear that
defendant Maggie E. Feebeck does not occupy the position
of an innocent purchaser; and the record presents simply a
,case where a husband, through his wife, acting as his agent
and she acting through her sister, purchased the lots in con-
troversy, and, without his knowledge or consent, the title thereto
was taken in the name of his wife. That such facts operate
to vest in the wife the legal title in trust for her husband is
clear. Defendants, however, urge in their brief that, where
a husband purchases land and takes a deed in the name of
his wife, it will be presumed that it vests an absolute title in
the wife as an advancement or gift, instead of creating a re-
sulting trust in favor of the husband. We are of the opinion
that defendants are estopped from insisting upon the theory in
this case; for, by the pleadings in the trial court, the only
issue of fact made, and the only theory upon which the case
was tried, was that plaintiff did not purchase the lots, and
did not furnish the purchase price therefor, but that the same
were purchased by his wife for herself and with her own funds.
It is a general proposition that, where a party assumes a cer-
tain position in a legal proceeding and succeeds in maintaining
that position, he may not thereafter, simply because his in-
terests have changed, assume a contrary position, especially if
it be to the prejudice of the party who has acquiesced in the
position formerly taken by him.

He cannot try his case upon one theory in the trial
court, and in this court change his ground and attempt to
prevail upon theories of fact and of law applicable thereto,
not presented to the trial court. *Bullen v. Arkansas, etc., Ry.
Co.,* 20 Okla. 819, 95 Pac. 476; *Border v. Carrabine,* 24 Okla.
609, 104 Pac. 906. But if we were mistaken as to the record in
this respect, the doctrine which defendants invoked has no
application to the facts in this case. It is a general rule
that where one purchases real estate and pays the purchase
price, and the deed is taken in the name of another, a re-
sulting trust arises by operation of law in favor of the one

furnishing the money. There is the well-recognized exception or modification that this presumption does not arise where there is an obligation, legal or moral, on the part of the person paying the purchase price to provide for the grantee, as husband for wife or parent for child, for, in such cases, there arises a presumption of a gift or advancement for the benefit of the grantee; but this latter presumption is a presumption of fact and not one of law, and may be rebutted. *Smithsonian Institution v. Meech,* 168 U. S. 398, 18 Sup. Ct. 396, 42 L. Ed. 793; *Milner v. Freeman et al.,* 40 Ark. 62; *Watson v. Murray,* 54 Ark. 499, 16 S. W. 293; *Flanner v. Butler et al.,* 131 N. C. 155, 42 S. E. 547. But this presumption, constituting the exception or modification of the general rule, cannot arise or apply where the deed was executed to any such third person without the knowledge or consent of the real purchaser; for it cannot be presumed what was the purpose or motive of an act which was never performed. If plaintiff in the instant case did not cause or know of or consent to the execution of the deed to his wife, instead of to himself, it is impossible for us to presume that he intended it as a gift or advancement, or benefit to her (*Flanner v. Butler et al., supra*), and by taking the title a resulting trust in her husband's favor arose.

It follows from the foregoing views that the judgment of the trial court should be reversed and the cause remanded with instructions to enter judgment for plaintiff in accordance with the prayer of his petition.

All the Justices concur.