## GORTON v. FREEMAN *et al.*

No. 5727.   Opinion Filed October 5, 1915.

(152 Pac. 127.)

1. **PRINCIPAL AND SURETY—Release of Surety—Building Contractor's Bond—Payments to Contractor.** Where by the terms of a building contract the contractor, for a definite consideration to be paid to him and under his direction to laborers and materialmen proportionately as the work progressed, undertakes to pay for all labor and material and to construct and complete a building and deliver the same clear of liens, and gives a bond conditioned upon the faithful performance of such contract, the owner has the right to perform the contract on his part by paying such consideration when due, in accordance with its terms; and in case of the breach of the contract on the part of the contractor by his failure to pay claims and satisfy liens of subcontractors against the property, duly filed as provided by statute, the owner may pay such claims and discharge the liens without awaiting suit and judgment thereon and look to the bond for reimbursement for the amount he is thus compelled to expend in excess of the contract price. The fact that the owner paid the contractor, in conformity with the contract, without awaiting the expiration of 60 days after the time labor was performed or material furnished for which liens are established upon his property, does not relieve the surety from liability on the bond.

2. **SAME—Action—Pleading.** Petition examined, and **held** to state a cause of action.

(Syllabus by Bleakmore, C.)

*Error from Superior Court, Garfield County;*
*Dan Huett, Judge.*

Action by J. E. Gorton against Charles Freeman and others. Judgment for defendants, and plaintiff brings error. Reversed and remanded.

*Garber & Kruse,* for plaintiff in error.

*Parker & Simons,* for defendants in error.

Opinion by BLEAKMORE, C.   This is an action on the bond of a building contractor commenced in the su-

perior court of Garfield county on the 12th day of July, 1911, by the obligee against the surety. Demurrer to the petition was sustained and judgment rendered for defendants, from which action of the court plaintiff appeals. The petition alleges, in substance, a contract between the plaintiff, as owner, and a contractor for the construction and completion of a certain building according to written plans and specifications, the contractor to furnish and pay for all material and labor, in consideration of a definite sum to be paid to him, and under his direction to laborers and materialmen, in proportionate weekly installments as the work progressed; that to secure the faithful performance of said contract the contractor, with defendant Nelson as surety, executed and delivered to plaintiff a bond in the sum of $600, a copy of which is made a part of the petition, containing the following provision:

"Now, therefore, if the above-bounden Charles Freeman shall well and truly perform and fulfill all the covenants and agreements by ———— in said contract for the erection and completion of said building, to be performed and fulfilled as therein set forth, and to the written approval of the said J. E. Gorton, and will save and keep harmless the said ———— and the said building and the land on which the same is erected from all and every claim for liens for materials, labor, or otherwise, incurred by reason of the erection or completion of said building, and shall turn over the said buildings to the said J. E. Gorton free and clear from all liens or claims for materials or labor, then this obligation to be void; otherwise to remain in full force and virtue."

It is further alleged that the contractor completed the building according to the plans and specifications, and that as the work progressed plaintiff paid to said contractor and to laborers and materialmen under his direc-

tion, in accordance with the terms of said contract, certain sums of money aggregating the full contract price; that said contractor, in violation of the provisions of said contract, having procured from a lumber company and used in the construction of said building certain materials of the value of $795.75, failed to pay therefor; that within the statutory period said lumber company filed a statement of its claim and lien in the office of the clerk of the district court, and thereby obtained a valid, subsisting lien against the property of the plaintiff in said amount; that in order to prevent the foreclosure of said lien and the sale of his property, and to save costs, plaintiff was compelled to pay said claim and discharge said lien, and in doing so was forced to expend the sum of $337.35 over and above the contract price of said building, etc.

It is the contention of defendants that, had plaintiff availed himself of his rights under the provisions of the statute, his property could not have become liable to or affected by a lien in any sum greater than that which he had agreed to pay to the contractor, and that, if the property of the plaintiff was impressed with a lien for an amount in excess of the contract price, it was by reason of his own imprudence in making the payments to the contractor during the period of 60 days after the furnishing of the material within which a lien therefor could properly be filed, and that such payments before the expiration of said time were made at his own risk.

The statute (section 6153, Comp. Laws 1909; section 3864, Rev. Laws 1910) defining the conditions under which laborers and materialmen might obtain a lien provides:

"Any persons who shall furnish any such material * * * under a subcontract with the contractor * * *

may obtain a lien upon such land, or improvements, or both, from the same time, in the same manner, and to the same extent as the original contractor for the amount due him for such material * * * by filing with the clerk of the district court of the county in which the land is situated, within sixty days after the date upon which material was last furnished * * * a statement, verified by affidavit, setting forth the amount due from the contractor to the claimant, and the items thereof as nearly as practicable, the name of the owner, the name of the contractor, the name of the claimant, and a description of the property upon which a lien is claimed. * * * Immediately upon the filing of such statement the clerk of the district court shall enter a record of same in the docket provided for in section 6152, and in the manner therein specified; provided, further, that the owner of any land affected by such lien shall not thereby become liable to any claimant for any greater amount than he contracted to pay the original contractor. The risk of all payments made to the original contractor shall be upon such owner until the expiration of the sixty days herein specified, and no owner shall be liable to an action by such contractor until the expiration of said sixty days, and such owner may pay such subcontractor the amount due him from such contractor for such labor and material, and the amount so paid be held and deemed a payment of said amount to the original contractor."

In the case of a building contract like the present, where the contractor undertakes to furnish all material and labor necessary to construct and complete a building for a definite sum, there is no privity of contract between the owner and one who, by virtue of a contract with the original contractor, furnishes labor or material used in the building, such as would impose liability upon the owner personally to pay for such labor or material, or entitle the subcontractor, laborer, or materialman to a personal judgment against him. *Alberti v. Moore et al.*, 20 Okla. 78,

93 Pac. 543, 14 L. R. A. (N. S.) 1036. The statute, how-. ever, permits a subcontractor, laborer, or materialman to obtain a lien upon the building and property of the owner by the procedure therein prescribed. Certainly it was not contemplated by the law that the owner should be held immediately liable to any one for more than he had contracted to pay, nor could he be so held if there was faithful performance of the contract by the contractor.

The risk of all payments made to the original contractor until the expiration of the specified 60 days is placed by the statute upon the owner only as between him and those persons not parties to the original contract who furnish labor or material going into the building under subcontract for which a lien may be obtained. As between the owner, on the one hand, and the contractor and his surety, on the other, the terms of the contract as to the time and manner of payment will control. It was obviously the intention of the Legislature to protect subcontractors, laborers, and materialmen who are not parties to a building contract, by providing a means whereby payment of their claims for services rendered or material furnished to a contractor, under a contract with him, and used in a building, might be secured, and enforced under certain conditions, by the sale of the property itself. The statute, *supra*, prescribing the procedure for obtaining liens by subcontractors and others for material and labor furnished under contract with the original contractor, is not primarily germane to a building contract, and was not intended to impair, enlarge, or circumscribe the contractual right and obligations of the parties to such contract, save to the extent of permitting the owner to pay directly the claims of a subcontractor and to defer the right of action by the contractor for a specified time.

Clearly it could in no manner affect the conditions of a bond given to insure the performance of the contract or the liability of the surety. The parties to such contract are at liberty to agree upon any terms of payment by them deemed most acceptable and convenient.

Under the contract in question the owner agreed to and did pay portions of the contract price as the work progressed until he had paid in full. According to the contention of defendants, the only way in which he could have avoided liability beyond the contract price would have been to withhold the payments due to the contractor in violation of the terms of the contract until the expiration of 60 days after all the labor and material going into the building had been furnished. This position, in our opinion, is untenable. The owner had the right to perform on his part by paying the consideration, when due, in accordance with the provisions of the contract, and to presume that the contractor would in turn faithfully perform on his part, and in the event of his failure to look to the bond for reimbursement for any loss occasioned by his breach.

It is further contended that, under the conditions of the bond, defendant Nelson, as surety, was liable only for unpaid claims which had ripened into liens; that there was no obligation on the part of the plaintiff to pay any claims for labor or material until his property had become impressed with the lien established by judgment of the district court in an action brought for that purpose, and to which the contractor was a party; and that the existence of the unpaid claim of the lumber company, a statement of which had been filed with the clerk of the district court, constituted no breach of the conditions of the bond and created no liability thereunder. With this contention we

cannot agree. A materialman's lien is a creature of the statute. "Filing the claim does not create, but simply establishes, the lien." Boiset on Mechanics' Liens, 496. The lien of the lumber company upon the property of the plaintiff was established by the filing of the statement with the clerk of the district court in compliance with the provisions of the statute. While its foreclosure and a sale of the property could only be obtained by judgment in a proper action, yet the plaintiff, under the terms and conditions of the contract and bond declared on, was not compelled to await such judgment and incur the costs in such action before discharging the lien. The failure to deliver the building to plaintiff free of such lien was a breach of the building contract and of the conditions of the bond, such as rendered the defendant Nelson, as surety, liable.

The petition, in our opinion, stated a cause of action against defendants, and the court erred in sustaining the demurrer.

It follows, therefore, that the judgment of the trial court should be reversed, and the cause remanded.

By the Court: It is so ordered.