## FUQUA et al. v. TULSA MASONIC BLDG. ASS'N.

No. 17118.    Opinion Filed Jan. 31, 1928.

(Syllabus.)

1. **Contracts — Building Contract — Architect's Final Certificate Conclusive as to Performance—Effect of Fraud in Certificate.**

Where the building contract provides that payment shall be made upon the certificate of the architect as the work progresses, and full payment upon the issue of the final certificate of the architect, ordinarily the issuance of the final certificate is conclusive upon the parties as to the performance of the building contract, but in order for this certificate to have this effect, the architect must have exercised an honest judgment in issuing it, and any fraud or want of good faith on the part of the architect destroys the force of the certificate, and renders the same subject to impeachment.

2. **Principal and Surety—Rights and Liability of Surety Without Compensation.**

A surety has the right to prescribe the exact terms upon which he will enter into a contract of surety, and where he has assumed the burden without compensation, or without sharing in the benefits, he may insist upon a discharge from the obligations where the terms thereof have not been strictly observed. He is a favorite of the law and the benefits of the rule strictissimi juris.

3. **Same—Obligation of Surety for Hire— Liberal Construction Against Obligor.**

The obligation of a surety for hire, or who has a personal interest in the matters out of which his obligation arose, will be liberally construed most strongly against the obligor.

**4. Same—Liability on Builder's Bond—Effect of Obligee's Failure to Reserve Percentage of Value of Work as Completed According to Contract.**

The failure of the obligee in a builder's contract to retain the percentage of the value of the work finished and in place, lastly to be paid according to the terms of the contract, assuming that compliance with such stipulation is a condition precedent to a right of recovery on the builder's bond of which the contract is made a part, such failure so to retain such percentage does not defeat a recovery against the surety for hire in toto, but only to the extent such surety has been injured by such failure of the obligee so to perform; and the burden is on the surety to plead and prove the extent of such injury.

**5. Same—Nonliability of Surety to Owner Who Voluntarily Paid Materialmen Who Had no Lien on Property.**

A surety for hire on a contractor's bond is not liable to the owner who voluntarily paid obligations for materials furnished the contractor when such materialmen had permitted the statutory time for filing a lien statement to elapse without so filing liens and such obligations were not legally binding upon the owner at the time of such voluntary payment therefor.

Error from District Court, Tulsa County; Edwin R. McNeill, Judge.

Action by the Tulsa Masonic Building Association against J. R. Fuqua and the Maryland Casualty Company on builder's bond. Judgment for plaintiff, from which the Maryland Casualty Company perfects its appeal. Affirmed in part, and reversed in part.

Ross & Thurman, for plaintiffs in error.

William S. Rogers and P. D. Busby, for defendant in error.

RILEY, J. Plaintiff below, Tulsa Masonic Building Association, a corporation, secured a judgment against the defendants below, J. R. Fuqua and Maryland Casualty Company, a corporation, in the sum of $14,410.41. The action was based upon a breach of a builder's bond, wherein Fuqua was principal and the casualty company was a surety for hire.

On June 20, 1922, plaintiff entered into a written contract with Fuqua wherein the latter agreed to furnish the material and perform the labor in constructing the Masonic Temple at Tulsa, for the consideration of $77,450, in consideration of the faithful performance of the obligations of Fuqua. The plaintiff agreed in a written contract to pay the total sum of the consideration to Fuqua "during the progress of the work, on written certificates issued by the architect above mentioned based on the proper assessments of the actual work performed on the building less 15 per cent. as margin, which margin will be accumulated and lastly paid with the final certificate, which will not be issued until after the expiration of 21 days after the whole work under the contract is fully completed and accepted." It was further agreed that the work called for by this contract should be delivered to plaintiff free from all liens, claims, or incumbrances of any description whatsoever, other than the right of Fuqua to his lien; that if the contractor neglected or was unable to proceed with the work, plaintiff, after giving 48 hours' notice in writing, might furnish the material and labor for completing the work, "if the architect shall think proper," and charge the same against the contract price, the contractor to make good any deficiency.

The indemnity bond executed by Fuqua and the Maryland Casualty Company bound them to the plaintiff in the sum of said contract price. It recited that Fuqua, the principal, had entered into said written contract, "a copy of which is hereto annexed, and which contract is made a part hereof, as fully as if recited at length herein." The bond was to indemnify plaintiff against any loss or damage directly arising by failure of the principal to faithfully perform his contract. It provided that certain conditions were precedent to any right of recovery, among these that on default of the principal, the surety, upon notice and terms, might take over and complete the work; that the plaintiff should faithfully perform all the terms, covenants, and conditions to be performed by it in said contract.

Pursuant to his contract and bond Fuqua commenced the construction of the building. On April 29, 1923, he notified plaintiff that he would be unable to comply with his contract and that the unpaid bills at that time incurred in the performance of the contract amounted to the sum of $8,586.42. He itemized these bills. Thereupon plaintiff and the surety company from its office at Baltimore carried on correspondence whereby it was agreed between them that the surety company waived its right to assume the contract of Fuqua and to complete the building thereunder, and that plaintiff, Tulsa Masonic Building Association, should "proceed accordingly, * * * reserving, however, all the rights and privileges to recover damages from the bonding company and the contractor." The plaintiff did thereafter complete the building. It paid the said sum of $8,486.42 of

itemized delinquent bills, which amount, together with other sums expended in completing the work, amounted to $15,680.19, for which amount plaintiff brought its action. During the trial plaintiff admitted that the sum of $1,269.75 had been expended for labor and materials for extra work not included in the contract, and judgment was rendered for the amount claimed less the amount expended for extras. The cause was tried to a jury. At the close of defendants' evidence, on motion, the court instructed the jury to render a verdict in favor of the plaintiff in the sum of $14,410.41, which was accordingly done.

Fuqua has abandoned his appeal by failing to file briefs in support of his petition in error, consequently he is eliminated from the case.

The surety company has perfected its appeal.

The first assignment of error presented by the surety company in effect is that it is not liable on its bond for failure of plaintiff to prove the amount it paid out for completing such work, and to prove that such amounts were the reasonable and necessary costs of the material and labor actually used in completing the building.

It is to be noted that the contract was by express reference made a part of the bond sued upon. Under provisions of the contract it is to be noted that Fuqua was to perform the labor and furnish the material according to the plans and specifications, which by reference were also made a part of the contract, and such performance was to be to the entire satisfaction and under the direction of the architect named, and that plaintiff should make payment to Fuqua "during progress of the work on written certificates issued by the architects, above named, based upon the proper assessments of the actual work performed on the building," etc. It is conceded by the surety that all amounts for which plaintiff recovered were paid upon and in pursuance of written certificates issued by said architects.

In National Surety Co. v. Board of Education of City of Hugo, 62 Okla. 259, 162 Pac. 1108, it is held:

"Where the building contract provides that payments shall be made upon the certificate of the architect as the work progresses, and full payment upon the issue of the final certificate of the architect, ordinarily the issuance of the final certificate is conclusive upon the parties as to the performance of the building contract; but in order for this certificate to have this effect the architect must have exercised an honest judgment in issuing it, and any fraud or want of good faith on the part of the architect destroys the force of the certificate, and renders the same subject to impeachment."

Such is the general rule. 9 C. J. 826; Southern Real Estate & F. Co. v. Bankers Surety Company (Mo.) 207 S. W. 506.

As to this general issue, it is neither pleaded nor contended by the surety company that the architects in this case did not exercise an honest judgment in issuing the certificates for the work and labor done, nor is any fraud or want of good faith on their part pleaded or proven.

The first assignment must be overruled.

It is next contended that plaintiff cannot recover because it failed to retain, as a margin, 15 per cent. of the payments upon the work, which margin was to have been accumulated and lastly paid with the final certificate to be issued after the expiration of 21 days from the completion and acceptance of the work. The contract provided that the plaintiff should so retain such percentage. It is conceded by plaintiff that it did not fully comply with said provision in that it had advanced to Fuqua, prior to his surrendering the contract, for his accommodation in purchasing material, more than 85 per cent. of the amount due on the work at the time and retained only a part of such 15 per cent. to be lastly paid. The surety company contends that by reason of that, plaintiff cannot recover, because the bond provides that it was executed upon certain express conditions, the performance of each of which was a condition precedent to any right of recovery on the bond, and the express condition precedent was that plaintiff should faithfully perform the conditions of the contract on its part and retain that portion which the contract specified it should retain, until the complete performance by Fuqua of all the terms of the contract on his part. The rule strictissimi juris is invoked by the surety company under its contention that the retention of such 15 per cent. was an absolute condition precedent to recovery. However, section 5447, C. O. S. 1921, provides:

"The rule of the common law requiring a strict construction of the obligations of a surety shall have no application to the obligations of a surety or guarantor or indemnitor for hire, but all such obligations shall be liberally construed in accordance with the rules of the general law applicable to policies of insurance."

A surety has the right to prescribe the

exact terms upon which he will enter into a contract of surety, and where he has assumed the burden without compensation, or without sharing in the benefits, he may insist upon his discharge from the obligation where the terms thereof have not been strictly observed. The obligation of a surety for hire, or who has a personal interest in the matter out of which his obligation arose, will be liberally construed most strongly against the obligor. These rules are settled in this jurisdiction by the construction of this statute in Evatt v. Dulaney, 51 Okla. 81, 151 Pac. 607, and Chowning v. First State Bank, 102 Okla. 4, 225 Pac. 715, and cases cited therein. The sums which plaintiff did advance to Fuqua while he was performing the contract and for accommodation to enable him to pay for materials not yet in place and which sums were in excess of said 15 per cent. to be retained, and therefore in violation of the letter of said contract, were thereafter duly certified by the architects and were covered by such certificates and thus shown to have been expended and used for labor performed and material used in construction of the building under the contract.

In National Surety Co. v. Haley et al., 58 Okla. 263. 159 Pac. 292, this court held that the failure of the obligee to retain such 15 per cent. of the value of the work finished and in place, assuming that compliance with such stipulation was a condition precedent to a recovery on a bond, such failure to perform would not defeat a recovery against the surety for hire in toto, but only to the extent such surety had been injured by the failure to perform, and the burden was on the surety company to show the extent of such injury.

See American Surety Co. v. Scott, 18 Okla. 264, 90 Pac. 7; School District v. McCurley (Kan.) 142 Pac. 1077; and Lackland v. Renshaw (Mo.) 165 S. W. 314, where it is held that the referee's finding that the sums thus overpaid went to pay for labor and material actually employed in the construction of building conclusively disproves injury as a fact.

The surety company not only admits that such overpayments were covered by the certificates of the architect, but does not aver that such sums did not go to pay for labor and material actually used in the construction of the building. It is unnecessary here to hold that as a matter of fact the surety was injured or damaged by such certified overpayments, because the surety company pleaded only that it was "prejudiced in that plaintiff retained 15 per cent. of the archi-

tects' estimates, * * * there would have remained in its possession a sufficient sum to have fully completed said building." Under the facts set out, the payments were paid upon the architect's certificates and the law applicable thereto, the surety company could not be injured, for its obligation was to complete the building and the overpayments were expended for that purpose according to the architect's certificates.

The fourth proposition urged for reversal is that the plaintiff paid money to certain workmen who did not work in the completion of the contract; that thus an issue of fact was raised which should have been submitted to a jury.

The labor of these certain workmen was paid under the certificates of the architects. The alleged issue of fact as to them arose from the circumstances that Fuqua and his foreman were retained on the job for sometime in an advisory capacity after plaintiff took over the work. Fuqua and his foreman admitted, on cross-examination, that they did not know anything about these claims, because they were not employed at the time when the work was performed from which the claims arose. Such testimony was not in conflict with the proof that such workmen did perform the services as shown by the certificate of the architects, and there was nothing requiring submission of the matter to the jury.

It is urged that the surety company is exonerated because plaintiff did not give notice to the surety company of the default of Fuqua for three months, whereas the bond provides that such notice should be given promptly and in any event within ten days after learning of the default.

The evidence is that more than three months before plaintiff notified the surety company, Fuqua in conversation with the manager of the plaintiff stated that he was going to lose money on the building and that the contract price was not sufficient for the completion of the work. This and other circumstances to the same effect did not constitute such default as to come within the provisions of the contract as to notice. Within ten days after Fuqua actually notified plaintiff that he could not complete the building under the contract, on May 4, 1923, the plaintiff by letter notified the surety company of the conditions. The contention is without merit.

Under the third proposition submitted, raised by the 1st, 6th, and 10th assignments of error of the surety company's petition in error, it is contended that the surety on the

bond is not liable for any debts of the contractor for labor and materials paid by the obligee after the time for filing liens had expired.

It is apparent that the instructed verdict and judgment thereon, for $14,410.41, includes payment to numerous materialmen—claimed by appellant to be in the sum of $8,836.60, and paid to Midwest Material Company, Reliance Brick Company, Builders Supply Company, Tulsa Vitrified Brick Company, Patterson Steel Company, Standard Roofing & Material Company, and J. R. Farner, under contract with Fuqua, and such bills were delinquent on April 26, 1923, when the contractor defaulted. It must be admitted that no materials (or labor) were furnished to Fuqua after April 26, 1923, therefore, the 60 days "after the date upon which materials was last furnished or labor last performed under such subcontract" must have expired June 25, 1923, and it appears that on and after June 29, 1923, the plaintiff paid these delinquent bills of Fuqua amounting to $8,836.60, without any liens having been filed by these creditors of Fuqua on or before the preceding date when such liens could have last been filed. Therefore the Tulsa Masonic Building Association when it made the first payment on any one of these bills could have elected to pay or not as it saw fit—it may be argued it was morally bound, it may have been advantageous to have made payment so as to continue in its own behalf, harmonious and contractual relations—but undoubtedly it was not legally bound to pay at that date the debts of the defaulted contractor, hence these payments were voluntary and could not constitute loss or damage directly arising by reason of the failure of the principal to faithfully perform the contract.

In Village of Argyle v. Plunket (N. Y.) 124 N. E. 1, it was held:

"The undertaking executed by the appellant is in our opinion incapable of an interpretation which would allow the respondent voluntarily to go forth and pay debts against the contractor and then recover upon them against his surety. There must be involved somewhere, as an essential element of its right to recover, damages which have been or may be suffered by it by reason of the failure to pay these debts, and such an element is, in our opinion, utterly lacking."

In Gorton v. Freeman, 51 Okla. 516, 152 Pac. 127, this court held, in a case of a building contract, where the contractor undertook to furnish all materials and labor necessary to construct and complete a building for a definite sum, that there was no privity of contract between the owner and one who by virtue of a contract with the original contractor furnished labor or material used in the building, such as would impose liability upon the owner personally to pay such labor or material, and that the statute permitted a subcontractor, laborer, or materialman to obtain a lien upon the building and property of the owner by procedure in the statute prescribed; citing Alberti v. Moore, 20 Okla. 78, 93 Pac. 543, 14 L. R. A. (N. S.) 1036. Yet it is well established that the rule of strictissimi juris applies as to liens, so unless the procedure provided by statute was followed or unless the right to file a lien continued at the time of payment, no debt could be imposed upon the building association, and consequently no obligation could be imposed upon the surety. Wilson v. Nelson, 54 Okla. 457, 153 Pac. 1179.

We so hold that the owners of property making payments for which they are not legally liable and which are not used to discharge existing or impending liens cannot to that extent recover against the surety on the contractor's bond. See Growall v. Pacific Surety Co. (Cal. App.) 131 Pac. 73, where it was held the surety cannot be charged with any voluntary payments that plaintiff may have made in excess of that amount for which he was legally liable. There it was held, further, that the surety was not liable to the owner for attorney fees and cost incurred in defending against lien claimants, but, of course, such latter holding is not material here.

In Bell v. Paul, 35 Neb. 240, 52 N. W. 1110, it was held that even where the owner pays labor and material claims to prevent liens being perfected, sureties on a bond to indemnify the owner against loss on account of the failure of the contractor will not be liable. Neither do we embrace that doctrine, since such facts are not present here.

In Bryan v. Orient Lumber & Coal Co., 55 Okla. 370, 156 Pac. 897, this court held that a materialman can have no remedy as against the owner on account of materials furnished to a contractor unless he has complied with the lien law and filed a lien statement as therein provided within 60 days after the last material is furnished to the contractor, and in Seran v. Rose, 93 Okla. 192, 219 Pac. 940, it was held even in compliance with the lien statute by filing the lien statement within 60 days such materialman is not entitled to a personal judgment against the owner. 9 C. J. 835; Walton Lumber Co. v. Cox, 29 Okla. 237, 116 Pac. 798;

Union Bond & Inv. Co. v. Bernstein, 40 Okla. 527, 139 Pac. 974; Paulsen v. Western Electric Co., 67 Okla. 309, 171 Pac. 38.

The bond in question was not given for the benefit of persons furnishing materials or performing labor for the contractor, but only to indemnify the plaintiff.

We, therefore, hold that included in the judgment rendered against the surety company was the sum of $8,836.60 voluntarily paid by the plaintiff to creditors of the contractor for which the surety was not in any manner liable, and the trial court erred in to that extent instructing the jury to return its verdict, and the judgment to that extent must be remitted, and ten days after receipt of the mandate below such remittitur is ordered to be filed in the amount indicated by the record to have been so voluntarily paid. In all other respects the judgment of the trial court is affirmed. Unless such remittitur is so filed by defendant in error, the court below is ordered to grant a new trial.

BRANSON, C. J., and MASON, LESTER, PHELPS, HUNT, CLARK, and HEFNER, JJ., concur. HARRISON, J., absent, not participating.

Note.—See under (1) 9 C. J. p. 828, §166; 6 R. C. L. p. 962; 2 R. C. L. Supp. p. 253; 5 R. C. L. Supp. p. 382. (2) 32 Cyc. p. 73; anno. 27 L. R. A. (N. S.) 593; 21 R. C. L. p. 975; 4 R. C. L. Supp. p. 1440; 5 R. C. L. Supp. p. 1179; 6 R. C. L. Supp. p. 1296. (3) 32 Cyc. p. 307. (4) 9 C. J. p. 858, §196. (5) 9 C. J. p. 856, §195.