## CONSOLIDATED CUT STONE CO. v. HARTFORD ACCIDENT & INDEMNITY CO.

### No. 631.

Circuit Court of Appeals, Tenth Circuit.

Jan. 10, 1933.

Rehearing Denied Feb. 20, 1933.

W. A. Daugherty, of Tulsa, Okl. (C. A. Steele, of Tulsa, Okl., on the brief), for appellant.

Herbert S. French, of Tulsa, Okl. (Herbert D. Mason and Harold R. Williams, both of Tulsa, Okl., on the brief), for appellee.

Before LEWIS, COTTERAL, and PHILLIPS, Circuit Judges.

COTTERAL, Circuit Judge.

J. L. Seidenbach employed J. W. Wilson, by a written contract of August 26, 1926, to erect a building on certain real estate, in Tulsa, Okl. On December 4, 1926, a bond was furnished by Wilson, with the appellee as surety, binding the appellee as surety to Wilson and his heirs and successors, and conditioned that Wilson would perform the terms of the contract and save Seidenbach harmless from all liens for labor and materials. The appellant, a subcontractor, brought this suit to recover of the appellee on the said bond the sum of $12,269.28, for stone and labor furnished in erecting the building. The appellee demurred to the petition for failure to allege a cause of action. The demurrer was sustained. The appellant elected to stand on the petition, whereupon judgment was rendered, dismissing the suit. This appeal followed, presenting the question whether appellant may recover on the bond of appellee.

The contract obligates Wilson, as contractor, to provide all the labor and materials for the erection of the building, at the agreed price of $128,146. It requires him to do everything specified in the annexed "General Conditions" and "Specifications" made a part of the contract. Those instruments should be construed together.

Article VI of the contract specifies it shall not be binding upon the owner until the contractor shall furnish a bond, guaranteeing performance of the contract. Article 30 of the conditions provides that the owner shall have the right prior to signing the contract to require a bond of the contractor, covering the faithful performance of the contract and the payment of all obligations thereunder.

The contract specifies the owner shall pay to the contractor, twice a month, on statements audited by the architect, 85 per cent. of the value of labor and materials, and with all statements except the first there shall be filed with the architect a release of all lien claims. In the general conditions, there are provisions which bind the contractor to fur-

nish the architect applications for the payments, and, if required, receipts, for materials and labor, and which postpone the payments until, if required, delivery is made to the owner of a release of all lien claims, or a bond is given therefor.

It is recited in the conditions, in article 36, "nothing contained in the contract documents shall create any contractual relation between any subcontractor and the Owner." And at the foot of the conditions, it is stated the contractor and subcontractor agree "nothing in this article shall create any obligation on the part of the Owner to pay or to see to the payment of any sums to any Subcontractor."

These conditions also recite that the law of the place of building shall govern the construction of this contract.

The contract may be fairly regarded as obligating the contractor to pay claims for labor and materials. But it does not follow that the appellant, a subcontractor and not a party to the contract, may enforce payment therefor against the surety in the bond. The question has arisen in many states, and the decisions are not in harmony, proceeding upon different theories.

It has been held the weight of authority denies the subcontractor a right of action, unless there is "an intent by the promisee to secure some benefit to such third party, and * * * some privity between them, some obligation or duty owing from the promisee to such third party, giving the latter a legal or equitable claim to the benefit of the promise." Federal Surety Co. v. Minneapolis Steel & Machinery Co. (C. C. A.) 17 F.(2d) 242, 243; Williston on Contracts, § 372; 13 C. J. p. 709.

In German Alliance Insurance Co. v. Home Water Supply Co., 226 U. S. 220, 33 S. Ct. 32, 35, 57 L. Ed. 195, 42 L. R. A. (N. S.) 1000, it was said that "even where the right is most liberally granted, it is recognized as an exception to the general principle." However, as the place of performance of this contract was in Oklahoma, the law of that state applies to the contractual relations of these parties. Ramsey & Gatlin Construction Co. et al. v. Vincennes Bridge Co., 283 U. S. 796, 51 S. Ct. 484, 75 L. Ed. 1420.

We may properly eliminate those cases involving contracts for the construction of public works on buildings, as the statute confers a remedy on the bond. Sections 7486, 7487, C. O. S. 1921. See Southern Surety Co. v. Waits, 45 Okl. 513, 146 P. 431; Donaldson

& Yahn v. Benight et al., 105 Okl. 108, 232 P. 116; Dolese Bros. & Co. v. Chaney & Rickard, 44 Okl. 745, 145 P. 1119.

It will suffice to refer to a few of the later cases in Oklahoma, which show that the rule appears to be settled that a third party may not recover on a surety bond given to another, unless there is privity of contract with such party, and an obligation or duty which confers a right of action. Fuqua v. Tulsa Masonic Building Association, 129 Okl. 106, 263 P. 660; Beardsley v. Stephens, 134 Okl. 243, 273 P. 240, 242; Sterrett v. Inter-State Trust Co., 140 Okl. 125, 282 P. 290; Commonwealth Cotton Oil Co. v. Lester, 156 Okl. 93, 9 P.(2d) 738.

In the Beardsley Case, the question was whether a grantee in a deed effectively assumed a mortgage debt, where his immediate grantor was not liable. The decisions in New York, including Vrooman v. Turner, 69 N. Y. 280, 25 Am. Rep. 195, were followed. It was held as follows: "To give a third party, who may derive a benefit from the performance of a promise, an action, there must be: First, an intent by the promisee to secure some benefit to the third party; and, second, some privity between the two, the promisee and the party to be benefited, and some obligation or duty from the former to the latter, which would give him a legal or equitable claim to the benefit of the promise or an equivalent from him personally."

In the Fuqua Case, supra, following Gorton v. Freeman, 51 Okl. 516, 152 P. 127, a building contract was involved, and the like principle was announced. It was reaffirmed in the Lester Case.

Section 4988, C. O. S. 1921, provides: *"Beneficiary may enforce.* A contract, made expressly for the benefit of a third person, may be enforced by him at any time before the parties thereto rescind it."

It is a pertinent inquiry whether the contract in this case was made expressly for the benefit of appellant as a subcontractor, on which its right of action might be founded. It does not so declare. The statute was not regarded as having that effect in the Beardsley Case. A better estimate of the contract is that, while the contractor was bound to pay claims for materials and labor, the sole purpose was to maintain the property free of liens. This is evidenced by the recitals in the conditions to which we have referred. But our views in this case, uninfluenced by the Oklahoma decisions, are altogether immaterial.

The trial court was right in following those decisions. The judgment in this case should be and it is affirmed.

LEWIS, Circuit Judge (dissenting).

The question here on the facts stated in the complaint is whether the subcontractor who furnished material and labor for the building can sue and recover therefor on the contractor's bond. If it be clear from the terms of the bond that the obligors intended it as a protection of the subcontractor's rights, then I think there can be no doubt of the latter's right to maintain the action; for it is generally held, and so declared by statute of Oklahoma (section 4988, Compiled Okl. Stat. 1921) that a third person for whose benefit a contract is expressly made, may sue upon it. J. W. Wilson is the principal named in the bond, appellee his surety and J. L. Seidenbach the obligee.

It appears that Wilson agreed with Seidenbach to construct a store building in Tulsa, Oklahoma, for which Seidenbach agreed to pay him $128,146. There was an agreement signed by Wilson and Seidenbach, but it alone did not constitute their contract. It stated: "The contractor (Wilson) and the owner (Seidenbach) agree that the general conditions of the contract and the specifications and addenda thereto and the drawings, together with the agreement, form the contract, and that they are as fully a part of the contract as if hereto attached or herein repeated."

The signed agreement also contained this: "This contract shall not be binding upon the owner until said contractor shall have furnished a bond acceptable to the owner, guaranteeing the full performance and compliance with this contract. The owner agrees to pay the customary premium for such bond."

The bond recited that the contract between Wilson and Seidenbach was attached to it and made a part of it; and one of the conditions of the bond is that Wilson "shall well and truly perform and fulfill all of the covenants and agreements by him in said contract for the erection and completion of said building to be performed and fulfilled, as therein set forth. * * *"

I now turn to the so-called "Conditions of the Contract," which were a part of the agreement, and in them are these obligations of Wilson, principal in the bond, which he has not kept, but violated, to the damage of appellant: "Unless otherwise stipulated, the contractor shall provide and pay for all material, labor * * * and other facilities necessary for the execution and completion of the work. The contractor agrees: To pay the subcontractor on demand for his work or materials as far as executed and fixed in place, less the retained percentage. * * *" All of the stone for the exterior of the building was furnished, cut and fixed in place by appellant under contract with Wilson and he agreed to pay appellant therefor, but has wholly failed. In that failure I think there was a breach of the bond, that it was intended as a protection of appellant and that the order sustaining the demurrer to the complaint should be reversed.