THE PERCY BIRDSALL v. THE INVERTROSSACKS AND THE JAMES McCAULLEY.

THE INVERTROSSACKS v. THE JAMES McCAULLEY.

(District Court, E. D. Pennsylvania. May 5, 1893.)

Nos. 5 and 10.

1. COLLISION—VESSEL AT ANCHOR—TUG AND TOW—NEGLIGENCE.
   A schooner lay at anchor, well over to the western side of the Delaware river, where the channel was over a mile wide, with her sails taken in, her bow pointing down the river, and her anchor light properly set. A tug with a large and heavy iron ship in tow, at the end of a long hawser, came up the western side of the channel. The tug passed the schooner a short distance off the port side, but the ship collided with the schooner's starboard bows, and inflicted considerable injury. *Held,* that both the tug and the ship were at fault,—the tug, in running with her unwieldy tow so far westward in the channel, and in approaching so near the schooner before turning off; and the ship, in failing to change her course and follow the tug until collision was inevitable.

2. SAME—DUTY OF TUG AND TOW.
   The fact that the ship was heavy, and the tug's control of her at the end of a long hawser very imperfect, imposed on both unusual vigilance, and rendered imperative the duty of keeping well to the eastward.

3. LIBEL IN REM—DEFENSES—RELEASE ON BOND—LOSS OF LIBELED VESSEL—LIMITATION OF LIABILITY.
   The fact that a ship, against which an action in rem is pending, after her release on bond, is lost in a subsequent venture, and that a petition for limitation of liability was afterwards filed, is not a defense to the libel.

In Admiralty. These were two libels in rem for collision,—one brought in behalf of the schooner Percy Birdsall against the ship Invertrossacks and the tug James McCaulley; and the other, in behalf of the owners of the Invertrossacks against the James Mc-Caulley. Decree in the former for libelants against both the ship and the tug; and in the latter, in favor of the ship, for half damages.

Curtis Tilton, for the schooner.

J. Rodman Paul and Horace L. Cheyney, for the ship.

John F. Lewis, for the tug.

BUTLER, District Judge. The schooner was at anchor on the night of January 10, 1892, in the river Delaware, well over to the western side, off Bombay hook, where the channel is a mile or more, in width. Her sails were taken in, and an anchor light properly set. The Invertrossacks, a very large and heavy iron ship, in tow of the McCaulley, at the end of a long hawser, was coming up on the western side of the channel. The tug passed the schooner a short distance off on the port side, while the ship came into collision with her bows (which pointed downwards) on the starboard side, inflicting considerable injury.

I do not find anything to justify a belief that the schooner was in fault. She was properly anchored in a suitable place, and all usual and necessary precautions were observed to warn approaching vessels of her position. Furthermore she was plainly seen from both the tug and ship at sufficient distance to enable them to keep off. No additional precautions (if any could have been taken) would have been of service.

I find both the tug and ship to have been negligent; the former in running with her unwieldy tow so far westward in the channel, and in approaching so near the schooner before turning off; and the ship in failing to change her course and follow the tug until collision was inevitable. The evidence fully justifies a belief that the latter was negligently handled. The warning of her lookout was not promptly heeded. She seems to have virtually committed herself to the guidance of the tug, and to have paid little attention to the latter's movements. The fact that the ship was very heavy and the tug's control of her, at the end of a long hawser, very imperfect, imposed on both unusual vigilance, and rendered the duty of keeping well over to the eastward, the more imperative. I will not discuss the evidence; it is sufficient to indicate my reasons for the conclusions reached.

A decree in favor of the schooner must be entered against both; and in favor of the ship against the tug for half damages.

The defense based on the fact that the ship after her release on bond, was lost in a subsequent venture, and that a petition for limitation of liability was afterwards filed has not been overlooked; but it cannot be sustained. The authorities cited are inapplicable to such a state of facts as exists here. It would be most unreasonable to subject the libelant to the consequences of such loss, after the vessel had been taken from her control, or from under her

attachment, and risked in another venture in which she had no interest or concern. The owners' prayer for limitation came too late; and came only for the purpose of shifting from their own shoulders a loss, (which arose exclusively from their own subsequent venture, and which they should consequently bear) to the shoulders of the libelant, who had no connection with it.