*F. M. Hughes, Morris Macks,* for plaintiff, in error.

*J. L. Mayson, W. D. Ellis Jr.,* contra.

---

### 2727.  THOMASON *v.* KEENEY.

### 2728.  ÆTNA INDEMNITY CO. *v.* KEENEY.

No material error of law appears, and the verdict is fully supported by the evidence.

DECIDED JANUARY 31,—REHEARING DENIED FEBRUARY 22, 1911.

Action on bond; from city court of Atlanta—Judge Calhoun. May 7, 1910.

*Dodd & Dodd,* for plaintiffs in error.

*E. M. & G. F. Mitchell,* contra.

HILL, C. J. Keeney brought suit against Thomason as principal and the Ætna Indemnity Company as surety, on a contractor's bond, seeking to recover for the default of the contractor in building a house. The jury found a verdict for the plaintiff, for the full amount sued for, and the defendants filed separate motions for a new trial, which were overruled, and separate writs of error were sued out. When the case was before this court on a former occasion, it was held that the petition stated a cause of action, and the judgment of the lower court, overruling a demurrer thereto, was affirmed. *Thomason* v. *Keeney,* 4 *Ga. App.* 721 (62 S. E. 470). The questions involved are practically the same in both cases. Besides the usual general grounds, the motion for new trial contains numerous special assignments of error, some of them applicable only to the surety company. We will decide those which we deem controlling. The general grounds may be disposed of by the statement that a careful consideration of the evidence shows that every essential allegation in the petition was proved, and the verdict in favor of the plaintiff should be allowed to stand, unless the trial judge committed some prejudicial error of law in his rulings or charge, or refusal to charge, as assigned in the amended motion for a new trial.

1. The first assignment of error insisted upon is that the court erred in refusing to charge the jury as follows: "I charge you that if the plaintiff by any act of omission or commission increased the risk of the surety on the bond, or exposed the surety to greater liability, then such act discharged the surety from any liability, and defeats plaintiff's right to recover against it." This was one of the defenses relied upon by the surety, and it is insisted that it was supported by the evidence. Unquestionably the request embodied a sound abstract principle of law. The defendant, however, specially pleaded and introduced evidence to prove the specific acts charged against the plaintiff, which it was alleged had increased the surety's risk and resulted in its discharge. The judge fully charged the jury the law applicable to these special pleas and to the pertinent evidence. In other words, the court, in making a concrete application of the abstract principle stated in the request, gave the defendant the full benefit of the principle, and in a clearer and more satis-

factory manner than would have been done if he had simply given the requested instruction .embodying the rule as to the rights of sureties in the abstract. A careful examination of the evidence leads to the conclusion that none of these special pleas alleging acts of the plaintiff or obligee which had increased the risk of the surety were sustained; but on the contrary, the evidence preponderated in favor of the contention of the plaintiff that he had paid out no money to the principal in the bond, except in accordance with its express terms, and that all of his acts before and after the default of the contractor were fully authorized.

2. The next error assigned is that the court erred in refusing to charge the jury as follows: "I charge you that the law imposes on the owner the duty to see that such parts of the contract price as he pays to the contractor improving real estate are applied by him first in payment for labor and material employed and used in performance of the contract. If you believe, from the evidence, that the plaintiff in·this case failed to perform his duty which the law imposes, and if you believe, from the evidence, further that contractor Thomason failed to thus apply all that was paid to him by plaintiff on the contract price, then I charge you that such failure on the part of the plaintiff to perform this duty operated to increase the risk of the surety, the Ætna Indemnity Company, and discharges it from liability on its bond." We do not think that this request embodied a sound principle of law. True, the owner is bound to see that money paid by him to the contractor is applied to claims for material and labor unpaid at the date of the payment to the contractor, but the owner's failure to do this does not increase the risk of the surety or discharge him from liability on the bond. It simply results in making the owner liable for such claims to the employees of the contractor and to materialmen who had furnished to the contractor the material to go into the house. It is only a breach of a legal duty which is imposed upon the owner for the protection of both himself and the employees and materialmen. But the risk that a contractor may not make the proper application of the money which is paid to him by the owner is one of the risks, and probably the chief risk, against which the owner is protected by the contractor's bond. If the owner of the building were required to see to the proper application by the contractor of all the money paid to him within the limits of the contract price, there would be little rea-

son or necessity for taking a bond, for in that event there could not be loss to the owner by any improper application of his money by the contractor. The decision in the case of *Green* v. *Farrar Lumber Co.*, 119 *Ga.* 30 (46 S. E. 62), relied upon by the plaintiff in error in support of his request to charge, does not sustain the proposition as contended for by him. That decision is simply an enunciation of the statute that requires the owner of property improved by a contractor to see that money paid by him to the contractor is applied to claims for labor and material not paid for at the date of the payment to the contractor, or else incur liability himself for such claims in the event the contractor fails to pay them. (Civil Code of 1895, § 2801, par. 2, as amended by the act of 1899 (Acts 1899, p. 33)). There is nothing in this decision that gives color to the contention that it is the duty of the owner of the property to see to the proper application of the money which he pays to the contractor, under penalty of discharging the surety from liability on the contractor's bond. As before stated, the proper application of the money paid by the owner to the contractor is a risk which the surety assumes when he signs the bond as surety, and it is a danger from which the bond protects the owner.

3. The bond provides that the owner of the property shall give to the surety immediate notice of any default by the contractor, and thereupon the surety shall have the option of completing the contract. As previously held in this case (4 *Ga. App.* 721), a requirement in a contractor's bond that the obligee shall give immediate notice to the surety of any default by the contractor is equivalent to a requirement of reasonable notice; and what is reasonable notice is in each case a question of fact for the jury. And it is also held in the same decision that what would be a reasonable time, after this notice was given to the surety, for him to exercise his option to assume the contract or to sublet or complete the same was also a question for the jury. In this case the jury found that a reasonable notice was given by the owner to the surety of the contractor's default, and the surety was given a reasonable time to exercise its option therein, and there was evidence to support the findings on both points. The surety simply failed to exercise its option after receiving the notice of the contractor's default, and the owner of the property was therefore fully justified in completing the contract himself out of the balance on hand of the contract price, and to

charge against the surety the amount so expended by him out of that balance. It is claimed that the act of the owner in completing the house and paying therefor out of the money in his hands increased the risk of the surety, and thereby discharged it from liability on the bond. The contract in this case was made a part of the bond. It expressly provided that the owner would have the right to finish the house, on the default of the contractor, out of the money in his hands. In doing exactly what he was authorized to do under the contract, as well as under the bond, the risk of the surety could not have been in a legal sense increased. It simply added to the amount of the surety's liability under the bond, but in no legal sense increased his risk.

4. The principal defendant, Thomason, contended that all the money paid to him by the owner was paid out by him for labor and material employed and used in the construction of the owner's house, and that no part of this sum had been diverted by him for any purpose. Of course, if this was true, no liability as to these items could have been claimed either against him as the principal contractor, or against his surety; and it is therefore contended that the only liability, under the evidence, that could have resulted on the bond was for the additional amount remaining of the contract price in the hands of the owner, which it was necessary for him to use in the completion of the house. The evidence was issuable as to whether the contractor made a proper application of all the money which the owner had paid to him, or had diverted a part thereof. The jury found in favor of the latter contention. If there was a diversion, then any valid and subsisting claim of lien, or lien held by the laborers and materialmen, in existence at the time the payment of the money was made by the owner to the contractor, when the diversion took place, would be a binding lien against the property of the owner; and if there were valid liens of this kind against the property, and the owner paid them because the statute compelled him to do so, he clearly had the right to hold the indemnity company liable on the bond, to the extent of these liens, as well as for the amount which it became necessary for the owner to use, of the contract price still remaining in his hands, to complete the house. In other words, under the express terms of this contract, as in all other building contracts, if the misappropriation by the contractor created a legal necessity on the part of the owner to pay liens on his

house, the surety would be liable therefor; and, under the express condition of this bond, the surety was not only liable therefor, but also liable to the owner for the amount of the contract price in his hands which it was necessary for him to use in the completion of the contract which the contractor had undertaken, and the faithful performance of which the surety had guaranteed, since the surety had failed to exercise the option to complete the house after 'the default of the contractor. The verdict in this case was for the aggregate amount of valid liens against the house which were proved to be due to the misappropriation of the money of the owner by the contractor, and the additional amount which the owner used of the contract price for the purpose of completing the house. The surety company endeavored to show that the principal contractor had paid all the money which had been paid to him by the owner on account of material and labor. This was really, on the merits, the only issue in the case, and the court fairly presented it to the jury, and instructed them that if the contractor had paid out all the money under his contract for labor and material, then there could be no existing valid liens of this character against the owner's property, and there could not, of course, be a recovery against the surety, or, as to that matter, against the principal contractor.

We deem it unprofitable to discuss any of the other questions made in this record. The charge of the court was adjusted to the issues made by the pleadings and the evidence, and no substantial error appears. The liability of the principal contractor and his surety was clearly established by the proof and the law applicable thereto, and no reason whatever has been presented to this court that would warrant the grant of another trial.

*Judgment affirmed in both cases.*