COLUMBIA CASUALTY CO., et al., v. RIGHT REVEREND PATRICK BARRY.

149 So. 567.

Division B.

Opinion Filed July 13, 1933.

*Maguire & Voorhis,* for Plaintiffs in Error;

*Pleus, Williams & Pleus,* for Defendant in Error.

BUFORD, J.—Defendant in error sued plaintiffs·in error, the declaration containing six counts.

Plaintiff in error, Louis Fleisher Construction Company, a Florida corporation, was· a contractor agreeing to con-

.struct a certain building for defendant in error, plaintiff in the court below, and Columbia Casualty Company, a New York corporation, was surety on the contractor's bond. Before the construction was completed, as it is averred in the declaration, the contractor defaulted and became unable to carry out its contract and thereupon the owner completed the contract.

The declaration claims' damages which are here in controversy by reason of the plaintiff in the court below being required to pay two sub-contractors large sums of money which should have been paid by the contractor, and for which he claimed in his declaration that the surety company was liable.

Many pleas were filed. The amended plea No. 23 was in the following language:

"As to the third count this' defendant says that after the execution by the principal and the said C. J. Balliet of the sub-contract, dated July 25th, 1928, for the furnishing and installation of the heating system in said school building as alleged' in said third count, the said C. J. Balliet commenced the performance of said contract and under and by virtue of the statutes of the State of Florida a person not in privity with the owner who is performing or is about to perform by himself or others labor or is furnishing or is about to furnish material may deliver to the owner or his agent a written cautionary notice that he will do certain work or will furnish certain materials or both and that a lien shall exist from the time of the service of the notice for the amount unpaid on the contract of and by the owner to the contractor, and that such service shall also create a personal liability against the owner of the property in favor of the lienor giving such notice for the amount due him, as aforesaid, but not to a greater extent than the amount of such original contract; that under and by virtue of said

statutes and pursuant thereto the said C. J. Balliet, on or about September 28th, 1928, delivered to Bishop Barry, the plaintiff herein and the owner, and to his agent, the Reverend Father Michael Fox, a written cautionary notice, notifying the said Bishop Barry that the said C. J. Balliet had contracted and agreed with the principal to furnish and install heating fixtures and appliances in the said school building at and for the amount of $6,581.77, and notifying the said Bishop Barry that the said C. J. Balliet was then engaged in furnishing labor and materials in the installation of said heating fixtures and appliances for the said Saint James Roman Catholic parish school building then under construction and notifying the said owner that should the contractor fail to pay to the said C. J. Balliet the said agreed amount for the furnishing of labor and material in the installation of said heating fixtures and appliances in said school building, then the said C. J. Balliet would call upon and look to the owner of said school building and the land upon which it was located to make payment to him, the said C. J. Balliet, of the same or any part thereof which the said principal might fail to pay to the said C. J. Balliet when the said sum or any part thereof should become due and payable and on which the said contractor should make default in payment thereof; that the said C. J. Balliet, during the months of September, October and November, 1928, furnished labor and materials in performance of the said contract to the extent and value of $2,673.95, of which payment was made of $2,276.76, leaving unpaid for said months the amount of $397.69; that upon the service of the said written cautionary notice as aforesaid and the furnishing of said labor and materials by the said C. J. Balliet to the extent of $2,673.95, as aforesaid, it became and was the duty of the plaintiff to hold and retain from the contract price payable to Louis Fleisher Construction Company a sufficient amount

to pay the sum remaining unpaid to the said C. J. Balliet, yet the said plaintiff, unmindful of his duty in the premises, did not retain from the said contract price, payable to the principal, any sum whatever to satisfy the claim of the said C. J. Balliet, but on the contrary did, after the service of said cautionary notice and after the furnishing of labor and materials to the extent of $2,673.95 as aforesaid, and without the knowledge or consent of this defendant, pay to the principal large sums of money, to-wit: $10,325.45, on or about December 4th, 1928, and $12,164.66 on or about January 5th, 1929. This defendant further avers that the said C. J. Balliet during the month of December, 1928, furnished labor and materials in the performance of the said contract to the extent and value of $2,940.95; that upon the service of said written cautionary notice, as aforesaid, and the furnishing of said labor and materials by the said C. J. Balliet to the extent and value of $2,940.95, as aforesaid, it became and was the duty of the plaintiff to hold and retain from the contract price, payable to the said Louis Fleisher Construction Company, a sufficient amount to pay the amount thus owing to the said C. J. Balliet, yet the said plaintiff, unmindful of his duty in the premises, did not retain from the contract price payable to the principal herein any sum whatever to satisfy the claim of the said C. J. Balliet, but on the contrary did, after the service of said written cautionary notice and after the furnishing of said labor and materials to the extent and value of $2,940.95, as aforesaid, and without the knowledge or consent of this defendant, pay large sums of money to the principal herein, to-wit, $12,164.66 on or about January 5th, 1929. This defendant further avers that in the suit filed by said C. J. Balliet in the Circuit Court of Orange County, Florida, as alleged in said Third Count, the said C. J. Balliet sought to recover for the value of said labor and materials furnished during

the month of December, 1928, as heretofore alleged, and the balance unpaid of the value of said labor and materials furnished during the months of September, October and November, 1928, as heretofore alleged, and that the final decree rendered in favor of the said C. J. Balliet, as alleged in said Third Count, was solely for the value of said labor and materials furnished during the month of December, 1928, as heretofore alleged, and the balance unpaid of the value of said labor and materials furnished during the months of September, October and November, 1928, as heretofore alleged."

Amended plea No. 26 was like plea No. 23 except that it applied to the payments made to Zane & Webber, co-partners, whereas the 23rd plea applied to payments made to C. J. Balliet.

Demurrers were sustained to these pleas. We are not advised as to what the other pleas were.

A trial resulted in a judgment in favor of the plaintiff.

Plaintiffs in error contend that the sustaining of demurrers to the pleas above referred to constituted error which would warrant reversal under the authority of the opinion and judgment of this Court in the case of Gato v. Warrenton, 37 Fla. 542, 19 Sou. 883, and other cases following the rule as stated in that case. It is contended on behalf of plaintiff in error that when and after cautionary notices were served it became the duty of the owner to withhold sufficient funds from the contractor to pay any claims that might become due to sub-contractors who had served cautionary notice. It must be borne in mind that this contract did not involve a public construction, that is a contract let by state, county or municipal officials for the construction of a public building or other public instrumentality, but was a private contract where the parties were not bound by the statute as to the form and effect of

the bond to be given, but could make and execute such bond as they saw fit to make and accept. Now, the bond in this case, which is made a part of the declaration, guaranteed performance of the contract and the terms of the contract became an integral part of the bond. The contract provided in part as follows:

"2. Contractor must furnish signed release or other evidence that last previous payment was properly applied in settling labor and material bills incurred in connection with this work before further certificate will be issued. The contractor shall prepare itemized sheet giving architects one copy to facilitate checking of amounts.

"3. It is expressly understood that since this contract is between the owner and one General Contractor, all material men and labor are to look to the General Contractor for payment. Only in the event that the General Contractor fails to promptly meet his obligations will it be necessary for such material men or labor to notify the Owner or Architects. It will be noted that should this be necessary that the Owner and the Architects have ample recourse in—first, cash held up pending receipted bills; second, the bond; third, the fifteen (15%) per cent. cash held out until completion to guarantee every outstanding bill."

This was a material provision of the contract. The effect of this language, as we construe it, was to relieve the owner from the necessity of withholding funds to cover the payment of claims of all persons who might file cautionary notices. In other words, the parties appear to have recognized that without a special contract to that effect that when a cautionary notice was served it would be the duty of the owner to withhold from the contractor so much of his earned compensation as would be required to pay off and discharge the obligation due by the contractor to the sub-contractor or laborer serving cautionary notice,

and, to evade the eventuality, this clause was inserted in the contract and therein it was provided that in the event it became necessary for the owner to pay the material men or laborers he should have the right to look to cash held up pending receipted bills; second, he had the right to look to the bond and, third, he had the right to look to 15% cash which the contract allowed him to withhold until the completion of the contract.

Now, under the conditions the effect of the cautionary notice was merely to create the basis of a lien against the property in the event materials and labor were not paid for by the contractor. The sub-contractors furnishing materials and labor had nothing to do with the contract between the owner and the general contractor and, therefore, their rights to have whatever advantage they might obtain by filing cautionary notice were not affected by the terms of the contract, but the terms of the contract were such that the owner might proceed to pay the general contractor, regardless of the service of the cautionary notice, and, as the contract stated, look to the cash remaining unpaid under the terms of the contract, as well as to the bond of the surety to reimburse him for any loss that he might thereby sustain.

It is not to be construed that this opinion in anywise conflicts with the former opinions of this Court holding as a general rule that after a cautionary notice the owner pays the contractor at his peril and that the law of suretyship will not permit the surety to be bound to reimburse the owner for funds which he paid out when it was his duty to retain them. The point in this case is that by the terms of the contract the owner was allowed to do that thing which he otherwise could not have done and still hold the surety liable to him for the loss thus occasioned.

Under this construction of the agreement between the

parties, it appears that the pleas to which demurrer was sustained set up no defense to the declaration and, therefore, the demurrers were properly sustained to such pleas.

The judgment should be affirmed and it is so ordered.

Affirmed.

DAVIS, C. J., and WHITFIELD, ELLIS, TERRELL, and BROWN, J. J., concur.