CHARLES VECCHIO, *et al.,* v. JOHN J. HANSON.

151 So. 407.

Division B.

Opinion Filed November 25, 1933.

Petition for Rehearing Denied December 27, 1933.

*H. L. Anderson* and *Sam R. Marks,* for Plaintiffs in Error;

*Crawford & May,* for Defendant in Error;

BUFORD, J.—This case is before us on writ of error to a judgment in favor of the plaintiff in the court below against the principal and sureties on a supersedeas bond. The

bond was executed and filed pursuant to an order of super-sedeas in a foreclosure suit. The condition of the bond is as follows:

"The condition of this obligation is such that whereas, in the certain equity cause lately pending in the Circuit Court in and for Duval County, Florida, wherein John J. Hanson was complainant, and Charles Vecchio was defendant, the defendant has taken and entered his appeal from the final decree entered in said cause on the 12th day of June, A. D. 1928.

"Now, therefore, if the above bounden principal and sureties shall well and truly have the mortgaged property involved in this cause forthcoming to answer any sale thereof under the decree of foreclosure in said cause, and shall well and truly pay all costs, expenses and damages (including any reasonable attorney's fees necessarily incurred by the complainant in defending said appeal) which the complainant may sustain by reason of said supersedeas, in the event the decree of foreclosure appealed from shall be affirmed by the Supreme Court of the State of Florida, or said appeal shall be dismissed, then this obligation shall be null and void, otherwise to remain in full force and effect."

The bond was in the penal sum of six thousand ($6,000.00) dollars.

The declaration declared upon a breach of the bond because of the failure of the parties to the bond to have the property referred to therein forthcoming as they were bound to do.

The pleas of the defendant Vecchio first denied the breach of the obligation and next, as a plea of confession and avoidance, set up the fact that the boats, which were the subject of the foreclosure suit, were at the time of the executing and filing of the supersedeas bond subject to a

maritime lien which was allowed to accrue upon said boats after the mortgage was given but prior to the filing of the bond and that the boats had been seized by order of the Federal Court under a decree enforcing a maritime lien in an admirality cause filed against such boats and that the boats had been sold under order of the Federal Court in that cause and placed beyond the reach and control of the defendant. He then, by way of attempted set-off, by three pleas in the form of common counts for money had and received, for money found to be due from the plaintiff to defendant, and for money lent by defendant to the plaintiff, claimed an indebtedness from plaintiff to defendant in the sum of $6,250.00.

Demurrer was filed to all except the first plea. The demurrer was sustained to the second and third pleas. The pleas of the defendants Demos and Lauderback were to the same tenor and effect as the first and second pleas of the defendant Vacchio and demurrer to these pleas was also sustained.

While the declaration contains language declaring for recovery of attorney's fees, counsel for the plaintiff in open court abandoned this item and stood for recovery on the declaration for breach of the bond in the failure to have the property forthcoming as was required by the terms of the bond. On the trial plaintiff introduced the bond in evidence and proved that the boats which were released to Vecchio under that bond had not been forthcoming to comply with conditions of the bond, and this, notwithstanding demand had been timely made for such compliance with the bond.

Verdict was entered in favor of the plaintiff for the full amount of the bond. It was contended that it was necessary for the plaintiff to prove the value of the boats involved to

be entitled to recover. We think this is not necessarily true. The bond was not that the boats or their value should be forthcoming but was unconditional that the boats should be forthcoming. They were not forthcoming. The order of supersedeas is not before us and, therefore, we must assume that the bond was given in compliance with the order of supersedeas and bound the obligors thereto to either have the boats forthcoming or to pay over to the complainant in that suit $6,000.00 on failure to produce the boats when required so to do by the terms of the bond.

The question presented by the second plea is whether or not the obligation of the bond will be nullified by subsequent enforcement of a pre-existing adverse lien. The allegations of the plea were that the liens had attached prior to the execution and filing of the bond. Therefore, the makers of the bond knew, or should have known, that those liens existed at the time at which they obligated to have the property forthcoming, and it was within the power of the obligors on the bond to discharge the liens and have the property forthcoming in compliance with the conditions of the bond.

It appears that it would be against every principle of justice to say that a mortgagor could allow a subsequent lien to attach to mortgaged property in violation of his mortgage agreement and when the mortgage was foreclosed give a supersedeas bond for the purpose of retaining the property in his possession, agreeing in such bond to have the property forthcoming to satisfy the decree, if the same should be affirmed, and then instead of discharging the lien created subsequent to the mortgage by his own act, and which lien in law became a prior lien, allow the property to be taken from his possession under such subsequently created but superior lien and plead his own defaults as a defense for non-performance of the condition of the bond.

Professor Williston in his splendid work on Contracts, Vol. 3, Section 1939, says:

"No doubt if the legal proceedings interfering with performance of the promise are in any way due to the fault of the promisor, as an attachment or receivership to collect a debt or debts rightfully due by him, the interference should constitute no defense, not because it is not the act of the law, but because the impossibility is primarily due to the promisor's own fault, not to fortuitous circumstances beyond his control. Where, however, the proceedings which interfere with the performance of the promise are based on no fault of the promisor there seems no reason why the interference should not be an excuse, unless the circumstances surrounding the formation of the contract are such as to indicate that the possibility of such interference was recognized and the risk of it assumed by the obligor."

The same author in Section 1932 says:

"Impossibility may be due to the nature of the thing to be done or to the capacity of the person who has undertaken to do it. The first is called objective, the second, subjective. In personal contracts these two kinds of impossibility unite. As the act to be done is bound up with the person who is to do it, and the act would not be that called for by the contract if it were performed by any one else, the incapacity of the promisor involves not only subjective impossibility but objective as well. Subjective impossibility except in the cases where it is also objective, does not excuse non-performance of a contract. Insolvency or inability to obtain necessary funds is a perfect illustration of subjective impossibility. It absolutely precludes making a payment contracted for, but whatever the cause of insolvency it is no excuse. And all kinds of impossibility arising from a

promisor's inadequate pecuniary resources are equally immaterial. An agreement to ship or to deliver goods is not discharged by inability, without fault on his part, of the promisor to get the means of shipment. Nor is an agreement to find a purchaser at an advanced price within a stated time by the impossibility of procuring such a purchaser."

Mr. Page, in his work on Contracts, 1st Ed., Section 1375, says:

"An event which should have been foreseen by the promisor as a reasonable man cannot be relied upon by him as a subsequent impossibility amounting to a discharge. Thus the fact that floods in western streams cause a change in the channel can not operate to discharge a contract for driving logs down to a slough which has once been filled up by a flood. In this case the contract was not rendered absolutely impossible, since at some expense the promisor could make use of another slough for the purpose of performing his contract."

The same author in Section 1381, says:

"If a party to a contract enters into a positive and absolute undertaking to do certain things, in which, by express terms or necessary implication, he binds himself to pay damages in the event that he does not do what he agreed to do, subsequent impossibility of performance does not operate as a discharge. Thus, if A makes a positive and unqualified contract to remove and rebuild a school house, the fact that such house is blown down by a wind storm does not discharge A from liability."

In The Percy Birdsall v. The Invertrossacks and The James McCaulley, 55 Fed. 683, Judge BUTLER held:

"The defense based on the fact that the ship after her release on bond, was lost in a subsquent venture, and that a petition for limitation of liability was afterwards filed has

not been overlooked; but it cannot be sustained. The authorities cited are inapplicable to such a state of facts as exists here. It would be most unreasonable to subject the libelant to the consequences of such loss, after the vessel had been taken from her control, or from under her attachment, and risked in another venture in which she had no interest or concern. The owners' prayer for limitation came too late, and came only for the purpose of shifting from their own shoulders a loss (which arose exclusively from their own subsequent venture and which they should consequently bear) to the shoulders of the libelant, who had no connection with it."

The Circuit Court of Appeals of the Third Circuit reversed the judgment in that case but the reversal was upon the evidence, not upon the law as expressed by the District Judge. See The Invertrossacks and The James McCaulley v. The Percy Birdsell, et al., 59 Fed. 194.

It is true that many cases will be found which hold that where a bond is given conditioned to have property forthcoming and the property is thereafter subjected to a prior existing mortgage lien and is sold under foreclosure of such lien and, therefore, a failure to have the property forthcoming occurs, the obligors on the bond may plead these facts in mitigation of damages, though not as a bar to recovery.

This rule, however, should not apply in cases where the principal obligor on the bond (as in this case) has allowed a lien to come into existence upon property previously mortgaged by him and in violation of such mortgage contract, which lien takes priority over the mortgage and which lien he allows to be enforced against the property, after giving a forthcoming bond to the mortgagee, in such manner that the property gets beyond his control and beyond the

reach of the mortgagee. In this case the allegations of the plea show that the conditions which precluded the principal obligor from complying with the obligation of the bond in having the boats forthcoming were due to his own acts of omission and commission in derogation of the rights of the mortgagee after the mortgage was executed and delivered by the mortgagor to the mortgagee and he should not be allowed to plead those conditions of his own making, either as a bar to recovery or in mitigation of damages.

The judgment should be affirmed and it is so ordered.

Affirmed.

DAVIS, C. J., and WHITFIELD, ELLIS and TERRELL, J. J., concur.

BROWN, J., dissents in part.

BROWN, J. (dissenting in part).—My view is that the plaintiff was only entitled, under the facts of this case, to recover the actual damages he sustained by reason of the breach of the bond not exceeding, of course, the penal amount of the bond, and that he should therefore have proven his damages by proving the value of the boats which were not forthcoming.