STANDARD ACCIDENT INSURANCE CO., v. MAX L. BEAR and D. F. SULLIVAN.

184 So. 97.
Division B.
Opinion Filed October 10, 1938.
Rehearing Denied November 14, 1938.

524

*Yonge, Beggs & Carter,* for Appellant;

*Watson & Pasco & Brown,* for Appellees.

BROWN, J.—This is the second appearance of this case in this Court. See Bear, *et al.,* v. Standard Accident Insurance Company, 124 Fla. 9, 168 So. 18. The history of the litigation out of which this case arose was so fully set out in the able opinion of Mr. Justice DAVIS on the former appeal that we deem it unnecessary to reiterate it here. And the salient facts presented now are much the same as before. It was determined by the Court on this first appeal that the cause should be remanded to the chancellor for a reconsideration and determination of what this Court held to be the only issue to be adjudicated, which was "whether or not Standard Accident Insurance Company has become liable on the bond of January 19, 1926, to indemnify and hold harmless the obligee Sullivan for the whole or any part of the Duval Lumber Company claim for materials used in the construction of buildings under the building construction contract to which the bond of the contractor was a mere incident, and the amount of such liability, if

any, to be applied to and set off against the judgment held by Standard Accident Insurance Company against Sullivan and Bear, his surety."

This Court by its opinion rendered on this first appeal did not conclude the chancellor on this question, as will be borne out by this statement in the opinion:

"Nor do we express any opinion on the question of that liability, if any, on the showing now made by the record herein."

On rehearing it was the opinion of the majority of the Court that the Chancellor in entering his final decree was probably largely influenced by the belief on his part that this Court's decision in the former case of Bear v. Duval Lumber Company, 112 Fla. 240, 150 So. 614, was "practically conclusive of the whole controversy adverse to the position argued by appellant. "The opinion on rehearing states:

"None of the previous opinions and judgments of this Court have conclusively settled the particular equitable claim of appellants Sullivan and Bear to the relief of exoneration sought in the present litigation. Therefore the present litigation should be reheard and redecided by the Chancellor in the light of the applicable principles of law that pertain to it, before this Court attempts to finally dispose of the case."

The Chancellor erroneously interpreted this opinion as a positive holding that the Standard Accident Insurance Company was liable to Sullivan and Bear on the contractor's bond, whereas it was the intention of the Court to send the cause back to the chancellor for an independent determination of this precise question.

The Chancellor, in entering his final decree, stated that he had previously proceeded on the theory that Sullivan, in

making the final payment to the contractor, Bryan, of the balance due on the contract price, which payment was made after the buildings were completed and accepted and after notice of the lien had been served on Sullivan by the materialman, Duval Lumber Company, violated a duty he owed the defendant as surety to him for Bryan, the contractor, and thereby made the debt for the materials his own debt, and that the defendant, Standard Accident Insurance Company, as surety, was thereby released from any liability to Sullivan, (or to Bear, his surety) for the amount of the decree enforcing the lien so acquired by the Duval Lumber Company, which had been paid by, and assigned to, appellant and which lien was based upon the giving of said notice. It was the further opinion of the chancellor that the Supreme Court in reversing the first final decree dated December 4, 1934, held to the contrary, and had definitely settled the liability of the surety to pay Sullivan the amount of the lien decree. The opinion and finding of the chancellor embraced in the decree further sets out that there has been brought before the court at this second hearing on additional facts materially changing the case from that presented at the previous hearing, and that the chancellor could do nothing but enter a final decree granting the relief prayed for by complainants, Sullivan and Bear. The Court thereupon found that the liability of Bryan's Surety, Standard Accident Insurance Company, to Sullivan under the Surety Bond, was identical with the judgment and liens which the Company sought to enforce against Sullivan and Bear and the Court therefore decreed that Sullivan, and Bear, as his surety, were entitled to exoneration from the Standard Accident Insurance Company and the Company and its assigns were forever enjoined from enforcing the decree which had previously been rendered in favor of the Duval Lumber Company, or the debts and liabilities existing by

reason of the execution of the release of lien bond and supersedeas bond, or the judgment recovered in the case of Duval Lumber Company, for the use and benefit of Standard Accident Insurance Company, v. Max L. Bear.

The chancellor's final decree was predicated upon the mistaken belief on his part that this Court's opinion on the former appeal necessitated this ruling. Whatever the chancellor's reasons may have been for entering his final decree, the duty now falls upon this Court to determine the correctness of the conclusions reached.

The only material question before the Court on this appeal is whether or not the chancellor correctly ruled that the Standard Accident Insurance Company, as surety on the contractor's bond, was liable on its bond to Sullivan, the obligee, to indemnity and hold him harmless for the whole or any part of the Duval Lumber Company's claim thus reduced to judgment against Sullivan.

It is contended by the appellant that it is released from liability as surety on the contractor's bond for two reasons: (1) That the bond is voidable because of their agent's undisclosed interest, as a joint adventurer, in the transaction; and (2) That payment by Sullivan, the owner, to Bryan, the contractor, after notice of a lien had been served on Sullivan by the materialman, Duval Lumber Company, the amount so paid being considerably more than the amount of said material man's claim, was a violation of the duty the owner owed to the surety and absolved the surety from liability on the bond to said owner in so far as such material man's claim was concerned.

We will first consider the appellant's second contention, which we deem the most important question, and decisive of the case.

In determining the correctness of the appellant's contention in this regard, and appellee's argument in reply thereto,

it is expedient to consider the applicable provisions of the contract and contractor's bond, which appellees rely upon as being sufficient to show appellant's liability in spite of Sullivan's voluntary payment to the contractor after he had been served with notice of the material man's claim and lien. The contract entered into provided that the contractor (a) should provide and pay for all labor and materials used in performing his contract; (b) gave the owner, Sullivan, the right to require the contractor, Bryan, to furnish bond guaranteeing faithful performance of his contract and the payment of all obligations thereunder; (c) provided that payments should be made to the contractor on architect's certificates; (d) provided that the architect might withhold from the contractor, or, on account of subsequently discovered evidence, nullify, the whole or any part of any certificate for payment to such extent as might be necessary to protect the owner from loss, on account of defective work not remedied, claims filed or reasonable evidence indicating probable filing of claims, failure of contractor to make payments promptly to subcontractors or for material or labor; (e) that the contractor should submit to the architect an application for each payment "and, if required, receipts and other vouchers showing his payments for materials and labor;" (f) penalized the owner by requiring him to pay interest on amount of any architect's certificate if payment thereof was not paid when due; (g) that the making and acceptance of final payment shall constitute a waiver of all claims by the owner, provided that final payment should not become due until the contractor, "if required, should deliver to the owner a complete release of all liens arising out of the contract or receipts in full in lieu thereof"; (h) provided that "if any lien or claim remain unsatisfied after all payments are

made the contractor shall refund to the owner all moneys that the latter may be compelled to pay in discharging such lien or claim"; and contained a provision that "The law of the place of building shall govern the construction of this contract."

The contractor's bond was executed by the Standard Accident Insurance Company, a compensated Surety, and by express reference made the contract a part of the bond, and guaranteed to the owner that the contractor would (a) faithfully perform his contract; (b) would satisfy all claims and demands incurred in performing the same; (c) would fully indemnify and save harmless the owner from all costs and damages he should suffer by reason of failure of the contractor so to do; (d) was conditioned to fully reimburse and repay the owner all outlay and expense he incurred in making good any such default of the contractor; (e) contained the further obligation to pay all persons who furnish the contractor with labor or materials; and (f) provided that any alterations made in the terms of the contract or in the work to be done under it, or the giving by the owner of any extension of time for the performance of the contract, or any forbearance on the part of either the owner or the contractor to the other, should not release the contractor's surety, notice of any such alteration, extension, or forbearance being waived by the surety.

The contractor purchased building materials from the materialman, Duval Lumber Company, to the amount of several thousand Dollars, which were used in the performance of the contract, but did not pay therefor.

According to the agreed statement of facts, on June 11th, 1926, the architect, with knowledge of the unpaid claim of Duval Lumber Company for materials furnished the contractor, and without requiring said contractor to submit receipts or vouchers showing payment of said claim, issued

to said contractor his final certificate for the balance of the contract price and did not at any time after the issuance of the certificate and before payment of the amount thereof to the contractor nullify the whole or any part of the certificate, nor did Sullivan request the architect to nullify the same in whole or in part.

After the issuance of the certificate, the Duval Lumber Company served notice of lien on Sullivan for the materials furnished the contractor, and Sullivan, being then indebted to the contractor for an amount in excess of the materialman's claim, and after service of said lien notice upon him, paid the contractor the amount of said architect's final certificate without requiring the contractor to deliver to him a release of the lien or claim of said material creditor.

The contention of appellees is that in so doing the owner paid the contractor in the manner prescribed by the contract, and that therefore, in so doing, the owner violated no duty that he owed to the surety.

Appellees admit that the owner, under the contract, had the right to require releases from all materialmen before making final payment to the contractor, but that the contract and bond did not impose any duty upon him to require such releases. But appellants contend that by requiring the contractor to furnish releases from the materialmen, or by requiring him to produce receipts from the materialmen, or by paying the Duval Lumber Company, after notice of their lien, the amount due them by the contractor out of the balance due by the owner on the contract price, the owner could have protected himself and his surety against any liability for the contractor's debt to the Lumber Company. To this appellees reply that in so far as the contractor and his surety were concerned the owner had a right to perform on his part by paying the consideration when due, in accordance with the provisions of the con--

tract, as they contend he did do, and that he had the right to presume that the contractor would faithfully perform on his part, and in the event of his failure the owner had the right under the contract to look to the surety bond for reimbursement for any loss occasioned by his breach; that it must necessarily be the law that a surety for the performance of a contract cannot be discharged because of anything done in pursuance of its provisions; that if the surety needed more protection against possible loss, it should have provided for it in the contract and bond and cannot be heard to complain that the owner, Sullivan, and the architect, did no more for its protection than the contract required.

The following cases among others are cited in support of these contentions: Gorton v. Freeman, *et al.*, 51 Okla. 516, 152 Pac. 127; Northern Light Lodge v. Kennedy, 7 N. D. 146, 73 N. W. 524; Maree v. Ingle, 69 Ark. 126, Chapman v. Enebreg, 95 Mo. App. 127, 68 S. W. 974; Roennigke v. Essig, 168 Mo. App. 363, 151 S. W. 765; Mass. Bonding & Ins. Co. v. Realty Trust Co., 137 Ga. 693, 73 S. E. 1053; Thompson v. Keeney, 8 Ga. App. 852, 70 S. E. 220; Columbia Casualty Co. v. Barry, 111 Fla. 517, 149 So. 567.

Appellees call our attention to the fact that the contract provided by Article XXIX that "If any lien or claim remain unsatisfied after all payments are made, the contractor shall refund to the owner all moneys that the latter may be compelled to pay in discharging such lien or claim, including all costs and a reasonable attorney's fee." As before stated, the bond guaranteed the performance of the contract on the part of the contractor, Bryan, and made the contract a part of the bond by reference. But this lien remained "unsatisfied" *before* all payments had been made, and the owner had notice of that fact before he made the final pay-

ment to the contractor. Appellees rely strongly on the reasoning applied by the Texas Court in First National Bank v. Lyon-Gray Lumber Company, 194 S. W. 1146, text 1153, as being particularly applicable to the present situation, in which case it was said:

"It has been definitely determined that written notice to the owner that a creditor for material holds a claim against the contractor is essential to the creation of a lien upon the owner's property to secure the payment of such claim; hence there can never be a lien upon a building in such cases except under conditions where the owner has the opportunity to protect himself by paying the money to the lien claimant instead of to the contractor. It follows, therefore, that no condition can arise where the owner may not protect himself, if he chooses to do so, against any such claims. Hence if we attach any significance to the conditions of the bond where it undertakes to hold the owner harmless against liens, it can refer only to those which the owner knowingly foregoes his right to settle and trusts their payment to the contractor. If the owner is not protected against that class of claims, then that feature of the bond is of no value whatever. The contractor by his bond expressly bound himself to deliver the building unencumbered by such liens, and the surety company guaranteed that he would perform that undertaking. The contention of the surety company we think is without merit. * * *"

The question here presented is a close one, but our view is that the reasoning quoted from the Texas case is not applicable to the exact question presented by the provisions of this contract and bond as applied to the facts in this case.

Here it appears that the final payment of $5,325.00 made by Sullivan to Bryan upon the architect's final certificate was made after all the work done under the contract had

been completed in accordance with the contract and after the buildings had been inspected and accepted by Sullivan and after Duval Lumber Company had served Sullivan with the statutory notice of its lien, and that no other notice of lien had been, or was thereafter, served upon Sullivan. There was no provision of the contract or bond which expressly authorized a payment to the contractor under such circumstances. And the surety's liability will not be extended by implication beyond the terms of his contract. Gato v. Warrington, 37 Fla. 542, 19 So. 883.

The general rule is that a surety, whether compensated or not, is subrogated as of the time the contract was made to the benefit of all securities and means of payment then or thereafter under the creditor's control; Union Indemnity Co. v. City of New Smyrna, 100 Fla. 980, 130 So. 453; and it follows that he is entitled to have the building fund in the hands of the owner properly applied as contemplated by the contract and bond and in accordance with law.

The fact that Sullivan had a surety bond to protect him against loss did not change the legal relations between him and the Duval Lumber Company. Grambling v. Chapman, 81 Fla. 362, 88 So. 258.

Appellant became surety for Duval Lumber Company through Sullivan, who procured its execution of the bond, which bond protected both the owner and the materialman. The situation of the parties imposed on Sullivan the duty of fair dealing and good faith toward appellant. Fulghum v. State, 94 Fla. 274, 285-6; 114 So. 367, 370-1. See also Vecchio v. Hansen, 113 Fla. 1, 151 So. 407; Gato v. Warrington, 37 Fla. 542, 19 So. 883; Union Indemnity Co. v. City of New Smyrna, 100 Fla. 980, 130 So. 453; 50 C. J. 235-6.

The general rule is well established that the creditor must for a surety's benefit apply to his debt all moneys and secur-

ities of the principal within his control which he has the right to so apply, and if he voluntarily surrenders or releases same, the surety is discharged *pro tanto*.

The bond was executed by appellant to Sullivan for the benefit of material men as well as himself. Construing the bond as a whole, we think its purpose was to give Sullivan the right to recover from appellant any loss he might actually sustain by being compelled to pay materialman out of his own funds. In other words, the bond gave Sullivan no right of recovery on his own behalf against appellant on account of materialman's claims unless and until he actually suffered damage by being compelled to pay them. Being in no wise obligated for the payment, no damage could accrue to Sullivan for the non-payment without service upon him of the statutory notice of lien, and even then no damage could result to him if he owed Bryan enough to pay the lienor. Curtiss-Bright Ranch Co. v. Selden Cypress Door Company, 91 Fla. 354, 107 So. 679. But the notice to Sullivan had the effect under the statute of completely appropriating to the claim of Duval Lumber Company a sufficiency of the amount due to Bryan by Sullivan to pay it. Such notice resulted in placing in Sullivan's hands a fund owing to Bryan applicable only to the payment of the claim of the Duval Lumber Company.

The contract says that the laws of Florida shall govern the construction of the contract. Section 5381 C. G. L. provides that a materialman, not in privity with the owner, may acquire a lien upon the owner's real or personal property by the delivery to him or his agent of a written notice that the contractor is indebted to the person furnishing material in the sum stated in the notice, and that a lien shall exist from the time of service of the notice for the amount unpaid on the contract of and by the owner to the contractor, or the person for whom the work was done or

material furnished. The statute further provides that such service of notice shall also create a personal liability against the owner of the property in favor of the lienor giving such notice for the amount due him as aforesaid.

The words "if required" in the paragraph of the contract relating to the right of Sullivan to demand releases before making final payment, did not, in our opinion, give him an option which he could arbitrarily refuse to exercise, especially after a notice of lien had been served upon him. As against the surety, certainly it was not the intention of this clause to confer on Sullivan the right to give up or surrender a security the surrender of which would injure the surety. Obviously these provisions were not inserted in the contract for Bryan's benefit. They were manifestly intended to give Sullivan a security against liens, and not to authorize him to pay Bryan after notice of a lien, which would be in the teeth of the statute. When Sullivan procured the execution of this bond he inserted no provision therein authorizing him to pay Bryan any moneys due him after a notice of lien had been served. The purpose of the provision in this regard must have been to give Sullivan, as a protection to him, the power to protect himself against loss by withholding money due Bryan. Holding under his control this security, it became his duty to his surety, and, under the statute, to the materialmen as well, to preserve this security by requiring the release of this lien before he paid the identical fund to Bryan. When the lien notice was given, there was no need for money to complete the work, the moneys due constituting the final payment. It could not therefore benefit Sullivan to pay Bryan rather than the materialman who had acquired the lien. This distinguishes the present case from those cases where the work was still progressing and the contractor needed the money to carry on, or the contractor defaulted and the owner had to com-

plete the work, or where the surety consented to the payment. Such a provision as is here relied upon by appellee should not, therefore, be construed as justifying payment in full to the contractor in the face of such a lien notice served.

Nor was Sullivan's payment to Bryan in defiance of the materialman's notice in any sense an alteration, extension or forbearance, within the meaning of that clause in the contract. And if the contract·or bond had really given appellant's consent to the payment by Sullivan to Bryan, in spite of the lien notice, this would have been a legal defense to Bear in the suit against him, which resulted in a common law judgment which was affirmed by this Court.

This contract and bond must be construed in the light of the statutes in force at the time of their execution. So construed the instant the notice was served on Sullivan his relation to the fund and to Bryan were changed. Sullivan became personally a debtor to the Duval Lumber Company, and his duty to that Company and to appellant required him to apply the money to the payment of the debt for which the notice was given, and not to pay it to Bryan, and when he made such a payment to Bryan, he released the surety from obligation to him. In other words, the statute operated to release Sullivan from any contract obligation to pay Bryan and to impose an obligation on him to pay the materialman instead. The contractor's bond did not purport to protect Sullivan against his own debts, but only against certain classes of debts contracted by Bryan. Thus Sullivan's loss, if any ensues, occurred only after the debt became his own and then only by his own fault. In a court of equity a party is not permitted to take advantage of his own deliction or neglect. Sullivan ceased to be a debtor to Bryan and became instead a debtor with Bryan to the Duval Lumber Company, with ample funds in his

hands, derived from Bryan, to discharge the entire liability under the express authority of the statute; the effect of which was to appropriate the amount involved in the materialman's debt to the extent necessary to pay that debt.

Our conclusion, therefore, is that the final decree appealed from must be reversed with instructions to enter a decree in favor of the appellant here, consistent with the views hereinabove expressed.

It is so ordered.

WHITFIELD, P. J., and CHAPMAN, J., concur.

ELLIS, C. J., and TERRELL and BUFORD, J. J., concur in the opinion and judgment.