158 So.2d 567 (1963)
A & T MOTORS, INC., a Florida corporation, Herbert Lane and Alvin L. Savage, Appellants,
v.
William R. ROEMELMEYER, as Trustee of the Estate of Growth Equities Corporation, a/k/a Interstate Acceptance, in bankruptcy, Appellee.
No. 63-202.
District Court of Appeal of Florida. Third District.
December 10, 1963.
Rehearing Denied January 6, 1964.
*568 Kastenbaum, Mamber, Gopman & Epstein and Norman B. Miles, Miami Beach, for appellants.
Gertler & Frank, Miami Beach, for appellee.
Before BARKDULL, C.J., and HORTON and TILLMAN PEARSON, JJ.
HORTON, Judge.
Appellant Alvin L. Savage, one of three defendants in the trial court,[1] seeks review of an adverse final judgment entered upon a jury verdict in favor of plaintiff-appellee. We affirm.
The record reveals that Herbert Lane was president and Savage, his brother-in-law, was secretary of A & T Motors, Inc., (hereinafter referred to as A & T). A & T's principal business consisted of buying and selling used automobiles. In order to purchase more automobiles for its inventory, it was A & T's practice to finance or "floor plan" automobiles with appellee Interstate Acceptance Corp.[2] This was accomplished in the following manner. An agent of appellee appraised each automobile and generally loaned A & T approximately 85% of the automobile's appraised value. Upon approval of the loan, A & T gave appellee title to such automobiles and executed, through Herbert Lane, a note and trust receipt. Appellee held the titles to these automobiles as security for the loans, knowing A & T could not sell them without the titles. A & T kept these automobiles on its lot and before selling an automobile, would satisfy the loan by check or cash, whereupon appellee surrendered the title.
On May 11, 1961, appellee commenced this action for damages against all three appellants. The complaint alleged, inter alia, (1) the appellants were indebted to appellee in the amount of $7,400 for monies borrowed by them in order to purchase automobiles for their inventory (as set forth above), (2) Lane had given his personal checks to appellee in payment of various loans and that appellee had returned to Lane the titles to the automobiles held as collateral, and (3) the checks were dishonored by Lane's bank for insufficient *569 funds. Appellee sought to hold appellant Savage liable based upon a guarantee agreement executed by him which guaranteed[3] to appellee all obligations of A & T.
After answer and various discovery proceedings, a summary judgment was entered which found that appellee had established by appellants' admissions the allegations in its complaint. The case was tried before a jury in which the sole issue was defenses raised by appellants. At the close of appellee's case, and again at the close of all the evidence, Savage moved for a directed verdict in his behalf on the ground that the testimony of appellee showed that it had released the automobiles held as security to Lane and A & T without the permission or consent of Savage and without giving him an opportunity to protect himself as guarantor; that he was therefore released from his obligation under the contract of guarantee to the extent of the value of said securities so released. These motions were denied. The jury returned a verdict against all of the appellants in the amount of $7,700.30, plus interest and attorney's fees, and judgment was accordingly entered. Appellants' motion for judgment non obstante veredicto or in the alternative for a new trial was denied. This appeal followed.
The appellant contends that the trial court erred in concluding that the release of security held by appellee did not release appellant-guarantor Savage to the extent of the security released. Appellant cites several cases in support of this position, principally, Standard Accident Ins. Co. v. Bear, 134 Fla. 523, 184 So. 97, 127 A.L.R 1, wherein it was stated:
"The general rule is well established that the creditor must for a surety's benefit apply to his debt all moneys and securities of the principal within his control which he has the right to so apply, and if he voluntarily surrenders or releases same, the surety is discharged pro tanto."
Appellant argues that although the court in the Standard Accident case, supra, used the term "surety" and not "guarantor," with respect to the principle of law involved, the two terms are synonymous in their application. While we agree with this proposition, other considerations impel us to conclude that under the facts in the instant case, the rule in the Standard Accident case, supra, is inapplicable.
*570 In a broad sense, a contract of guarantee corresponds with that of suretyship and a transaction which is called in some cases an absolute guarantee is denominated by other courts a contract of suretyship. As stated in 38 C.J.S. Guaranty § 6b:
"While each is, as to the principal, collaterally liable, as to the creditor or obligee the surety is primarily and directly liable on his contract from the beginning, whereas the liability of the guarantor is secondary and is fixed only by the happening of the prescribed condition at a time after the contract itself is made. * * * The contract of the surety is a direct original agreement with the obligee that the very thing contracted for shall be done, whereas a guarantor enters into a cumulative collateral engagement, by which he agrees that his principal is able to and will perform a contract which he has made or is about to make, and that if he defaults the guarantor will, on being notified thereof, pay the resulting damages. In other words, a surety is an insurer of the debt or obligation, while a guarantor is an insurer of the ability or solvency of the principal, although * * * this characteristic is not present in an absolute guaranty or a guaranty of payment, but only in a conditional guaranty or a guaranty of collection."
See also Plant City v. Scott, (5th Cir.1945), 148 F.2d 953, 955; Cochrane v. Town of Boca Raton, 112 Fla. 177, 150 So. 611, 613.
Without further effort to distinguish the indistinguishable, suffice it to say that the separate contract of guaranty signed by Savage, (note 3, supra) which contained language so broad as to include the underwriting by him of any and all types of choses in action or indebtedness due by the principal to the appellee, was an absolute one and made no reference whatsoever to collateral. Under such a contract, it is no defense to the guarantor that the creditor no longer holds the property given as security. As stated in Fegley v. Jennings, 44 Fla. 203, 32 So. 873, 874:
"The rule of the common law is that under such a guaranty [absolute and unconditional] presentation of the note by the maker when due, request to pay, and notice to the guarantor of dishonor need not be alleged; nor is the guarantee at law under any legal obligation to first resort to the maker of the note guarantied [sic], or any securities held for its payment. * * * The plea set forth a condition of the mortgage whereby it was claimed the note, by reason of a breach of such condition, became immediately due; then averred a request on plaintiff to foreclose, which the latter failed to comply with, and a loss of the property given as security in consequence thereof; but these facts constituted no defense to an action upon the undertaking of the defendant, which was an absolute and unconditional guaranty of payment * * *." [Emphasis supplied]
Further, it has been held that where the guaranty is an absolute one, it is no defense that the creditor has been negligent in regard to protecting and enforcing collateral security. Schaffer v. Acklin, 205 Iowa 567, 218 N.W. 286; see also 38 C.J.S. Guaranty § 82, p. 1251. Certainly, where the principal obtained the return of his collateral by the issuance of worthless checks, as in the case sub judice, it is an even stronger reason for not discharging the guarantor. See G.F.C. Corporation v. Nesser, Mo.Sup., 273 S.W.2d 264. Viewed in this light, we conclude that the release of security did not release appellant from his liability under his contract of guaranty.
Appellant further contends that the trial court erred in refusing to allow Lane and Savage to testify as to certain conversations had with an agent of appellee, one Gilmore, at or about the time of the *571 execution of the contract of guarantee. At the trial, appellee objected on the grounds that these conversations would violate the parol evidence rule. The court sustained appellee's objection but allowed appellant to proffer the witnesses' testimony. We have carefully read and considered this proffered testimony in the light of appellant's contention and are of the view that such testimony was properly excluded by the trial court.
No error having been made to appear, the judgment appealed is affirmed.
Affirmed.
NOTES
[1] The notice of appeal was filed on behalf of all three defendants. However, Alvin L. Savage is the only appellant participating in this appeal. Accordingly, all assignments of error relating to the other two defendants, not having been argued, are deemed abandoned. Rule 3.7(i), Florida Appellate Rules, 31 F.S.A.
[2] The original plaintiff. Subsequently by court order, William R. Roemelmeyer was substituted as plaintiff in his capacity as trustee in bankruptcy for Growth Equities Corp., a/k/a Interstate Acceptance Corp.
[3] consideration of you, herein called `Corporation,' purchasing or otherwise acquiring any notes, drafts, acceptances, leases, trust receipts, conditional sale contracts, chattel mortgages, accounts receivable, or other obligations or choses in action, herein called `Notes,' bearing the signature as Maker, Endorser, Guarantor, Acceptor, Assignor, or in any other capacity of
A & T Motors Inc of 2400 N.W. 36th Street 
 (Name) (Address)
herein called `Dealer,' the undersigned and each of them do jointly and severally guarantee to Corporation and to its affiliated and subsidiary companies, the faithful and prompt performance, payment and discharge by Dealer of any and all such Notes and/or and all agreements of Dealer with Corporation now in force or hereafter made, and without requiring any legal or equitable action against Dealer. "Notice of acceptance of this Guaranty is hereby waived. Presentment, protest and demand, and notice of protest and demand of any and all Notes are hereby waived. Any rights to extension, composition or otherwise under the Bankruptcy Act or any amendment thereof, or under any state or other federal statute are hereby waived. The extensions of the times of payment or the renewals of Notes or the extensions of the times of performance of agreements or any other compromises, adjustments, or indulgences may be granted to Dealer without notice to undersigned. If any claim against undersigned hereunder is referred to an attorney for collection, then undersigned shall pay 15% of the amount thereof as an attorney's reasonable fee.
"* * * Signed: Alvin L. Savage."