**THORNTON v. MILANDER, et al.**

No. 69-18482.

Circuit Court, Dade County.

November 10, 1969.

Joseph A. Gassen, Miami, for plaintiff.

Ralph F. Miles and Harold P. Kravitz, both of Hialeah, for defendants.

JAMES LAWRENCE KING, Circuit Judge.

*Final judgment:* The plaintiff, Leonard H. Thornton, filed an emergency petition at 10:25 p.m. on November 5, 1969 to contest the validity of an election held in the city of Hialeah on November 4, 1969. The court granted the plaintiff's application for an emergency restraining order prohibiting the defendants, Henry A. Milander, William H. Lockward, Vernon J. Ashley, Jack M. Cherry, Charles A. Whiteacre, Milton E. Thompson, F. A. Benedetto and J. Hosea Smith, from certifying and declaring Henry A. Milander as the winner of said election and scheduled the issues raised by the petition for emergency hearing on November 7, 1969.

Upon consideration of the pleadings, exhibits and memorandums filed by all parties and the testimony presented at the emergency hearing the court makes the following findings of fact and conclusions of law —

The voting machines provided by the election officials of Dade County at the request of the city council provided a ballot containing four printed names. The names of the individuals appearing on the printed ballot of each voting machine and the total number of votes cast for each individual in said election (including absentee ballots) for the office of mayor, are as follows —

| | |
|---|---|
| Henry A. Milander | 7,432 |
| Leonard H. Thornton | 6,884 |
| Harry Geissinger | 297 |
| McArthur Garcia | 225 |

The defendant, Henry A. Milander, received the highest vote by a majority of 26 above the total votes of the other three candidates for mayor. On the ballot submitted to the city electorate there was no provision for a column designated "personal choice" so that a voter could vote for a person of his choice other than those printed on the ballot, as required by section 44 (F) of the city charter.

In the election of November 4th there was a grand total of 15,055 votes cast by qualified electors. The plaintiff contends that 217 electors casting their ballot on November 4th did not wish to vote for any one of the above listed candidates for the office of mayor and could not insert the name of the person for whom they desired to vote, if any, because no such blank space was provided on the ballot. He further contends that if these 217 electors had voted for their personal choice it would have increased the number of electors voting in said race to the point where the defendant, Henry A. Milander, would not have received a clear majority of the ballots cost.

A qualified elector in a free democracy has the absolute right to vote for whom he pleases. This right, guaranteed each person by the constitution of Florida, cannot be restricted by requiring the elector to vote for only those whose names have been printed on the ballot. State, ex rel. Lamar v. Dillon, 32 Fla. 545, 14 So. 383.

The critical and controlling issue is, however — "What standing or right does the plaintiff have to complain"? He does not, and cannot, take the position that *he* was deprived of the right to vote for the person of his choice in the election of November 4th. It is clear that only one of the 217 electors not voting for mayor can contend that he was deprived of his constitutional right to express his choice since, not voting for the available printed ballot choices, he had no opportunity to write in the name of his choice.

It is self-evident that it was to the advantage of each of the four candidates for the slot on the voting machines permitting personal choice of the electors to be blocked out. Obviously it took fewer votes to get a clear majority under such circumstances. So it was to the advantage of the plaintiff *during the election* for the personal choice slot on the machines to be locked. The plaintiff testified that he examined the ballot prior to the day of the election, was familiar with it, met with the election officials, discussed the ballot, but did not point out to the election officials that the personal choice slot on the machines was blocked out. He failed to speak under circumstances requiring him to speak. It was to his advantage at the time he examined the sample ballot for the electors not to be afforded a personal choice. It became a disadvantage to him after the election. If a party is silent, "When he ought to speak, equity will debar him from speaking when conscience requires him to keep silent." Jones v. Watkins, 105 Fla. 25, 140 So. 920. "In a court of equity a party is not permitted to take advantage of his own dereliction or neglect." Standard Accident Insurance Company v. Bear, 134 Fla. 523, 184 So.97 at 103.

The court does not attribute to any of the candidates any improper motive in their failure to correct the defect but it would be inequitable to permit the plaintiff to assert this defect in the ballot at this period after the election when it is clear from his testimony he had an opportunity and indeed a duty to point out the defect before the election.

Many questions are posed by counsel for the parties with respect to what should be the appropriate interpretation of the charter of the city of Hialeah in reference to municipal elections and the provisions of the state law governing such elections. Most of these questions seem to receive an answer from a Supreme Court of Indiana case, Maurice Ubelhor v. James E. George, 227 N.E.2d 443. It is unnecessary, however, in the court's view of this case for the questions to be resolved.

It is thereupon ordered and adjudged that the complaint in this cause be and the same is hereby dismissed with prejudice, and that the restraining order entered November 5, 1969 be and the same is hereby dissolved.